[No. B166803. Second Dist., Div. One. June 9, 2004.]

In re the Marriage of RONA M. and FRANK R. GIOIA.
RONA M. GIOIA, Respondent, v.
FRANK R. GIOIA, Appellant.

**COUNSEL**

C. Casey White for Appellant.

Honey Kessler Amado for Respondent.

**OPINION**

**ORTEGA, J.**—In this marital dissolution case, the only issue reserved for trial in the family law court was whether a notice of abandonment filed in 1999 by the trustee in husband's personal bankruptcy action was ambiguous and, therefore, failed to remove the family residence on Coffman Drive from

husband's bankruptcy estate. The significance of the effectiveness of trustee's 1999 notice of abandonment is as follows: Pursuant to a settlement agreement of a fraudulent conveyance action maintained by trustee against wife, wife returned certain assets to the bankruptcy estate that husband had conveyed to her within a year of filing for bankruptcy. At the request of wife's divorce attorney, the fraudulent conveyance settlement agreement required trustee to quitclaim to wife the estate's interest in the Coffman Drive property, which was the subject of the earlier notice of abandonment. If the notice of abandonment was effective, as husband claims, the trustee's quitclaim deed would have conveyed nothing because the property, having been abandoned, was no longer part of the estate. But if the notice of abandonment was ineffective, as wife claims, the estate's interest in the property (husband's community property interest), not having been abandoned, would have been conveyed by the trustee's quitclaim deed to wife as her sole and separate property.

The family law court found that the bankruptcy trustee's notice of abandonment was ambiguous and, therefore, ineffective. Having determined that the residence was not abandoned, the court found that the trustee's quitclaim deed effectively conveyed the estate's interest (husband's community property interest) in the Coffman Drive property to wife as her sole and separate property. Husband has appealed from the order awarding the residence to wife.

In our view, the notice of abandonment was not ambiguous, but was a valid notice of abandonment. Accordingly, the Coffman Drive property, having been abandoned, was no longer part of the bankruptcy estate when the trustee executed the quitclaim deed to wife. As the quitclaim deed failed to convey husband's community property interest in the property, we reverse the order awarding the Coffman Drive property to wife as her sole and separate property and remand for further proceedings.

## BACKGROUND

The parties, Rona and Frank Gioia, were married in February 1963.

During the marriage, Frank owned and ran a business called State Produce Brokers, Inc. (State Produce), which was located on Randolph Street in the City of Commerce. State Produce owed about $940,000 in "PACA" claims (claims arising under the Perishable Agricultural Commodities Act, 1930 [7 U.S.C. § 499a et seq.]). PACA claims, if perfected correctly, are secured by the business owner's (Frank's) personal assets.

On December 10, 1998, Frank quitclaimed to Rona his interest in the Randolph Street property. He also gave Rona securities held in a Smith Barney account.

On January 8, 1999, Frank and Rona separated. On April 14, 1999, Rona filed for divorce. Frank moved out of the Coffman Drive residence, where Rona continued to reside with one or more adult children.

On July 8, 1999, Frank filed for personal bankruptcy.

On July 13, 1999, Frank filed a complaint in the bankruptcy court to set aside his transfer of the Randolph Street property to Rona, claiming it was a fraudulent conveyance intended to defraud his creditors. Frank needed the Randolph Street property in his bankruptcy estate to pay off secured PACA claims not covered by State Produce's assets.

Frank listed the family residence on Coffman Drive as part of his bankruptcy estate. Frank listed the home's market value as $100,000, and claimed a $50,000 homestead exemption (Code Civ. Proc., § 704.730).

On July 14, 1999, State Produce filed for bankruptcy.

Rona hired a bankruptcy attorney to protect her interests, fearing that she might be found to be a part owner of State Produce and held liable for the PACA debts. Rona, believing that Frank had written company checks to sham creditors, requested the appointment of a bankruptcy trustee.

On July 26, 1999, Carolyn Dye was appointed trustee of the bankruptcy estate.

On October 8, 1999, Dye reported to the bankruptcy court that the Coffman Drive residence was subject to the homestead exemption and therefore would probably not be included in the assets of the estate.

On October 8, 1999, Dye filed a notice of abandonment with regard to the Coffman Drive residence. The notice stated that on October 28, 1999, the trustee "will abandon to the debtor all of the estate's right, title, and interest in [the Coffman Drive residence] . . . [under] 11 U.S.C. [section] 554(a) on the grounds that [the property is] overencumbered and of inconsequential value and benefit to the estate. Pursuant to [former] Local Rule 9013-4 [presently renumbered as U.S. Dist. Ct., Local Bankr. Rules, C.D. Cal., rule 6004-1], the trustee may take the proposed action on the date specified above, without further hearing or order of the bankruptcy court, unless a timely objection or request for hearing is filed and served by any interested person.

Any objection or request for hearing must be in writing and filed with the bankruptcy court . . . and served upon the trustee's counsel . . . not later than fifteen days from the date of service of this notice."

No objection or request for hearing was filed or served in response to the notice of abandonment. Beginning in October 1999, the trustee ceased making payments on the Coffman Drive mortgage.

Washington Mutual Bank sent a letter dated November 22, 1999, advising Frank and Rona that their Coffman Drive mortgage was delinquent and foreclosure proceedings were imminent.

On December 10, 1999, Rona cured the Coffman Drive mortgage delinquency by paying the October and November payments. Rona thereafter assumed the monthly mortgage payments, which she has kept current.

In July 2000, Rona and Dye settled the fraudulent conveyance action. According to the settlement agreement, Rona quitclaimed the Randolph Street property to Dye. Rona and her children agreed to turn over the other disputed assets (the Smith Barney account and classic automobiles) to Dye, who promised to refrain from liquidating them, if possible, so they could be returned to Rona and the children. It was anticipated that the Randolph Street property would be sufficient to cover the PACA claims. Upon payment of all claims and administrative expenses, Dye would move to dismiss the bankruptcy proceeding. Upon dismissal, Dye would issue a check payable jointly to Rona and Frank of any excess proceeds. The family law court would then divide those funds and assets.

At the request of Rona's divorce attorney, a provision was added to the fraudulent conveyance action settlement agreement requiring Dye to quitclaim the estate's interest in the Coffman Drive residence to Rona. Dye executed the quitclaim deed on December 7, 2000.

Dye testified that the purpose of giving Rona the quitclaim deed to the Coffman Drive residence "was to simply clarify for Ms. Gioia that the estate was not asserting any interest . . . in any interest she had in the Coffman property. And so when I executed the quitclaim deed all I was trying to say was whatever I had by way of a claim to that property by virtue of your interest in it I give back to you." Dye testified that in her opinion, the quitclaim deed had *no* effect on Frank's interest in the Coffman Drive property, as Frank's interest had reverted to him following the estate's abandonment of the property. In Dye's opinion, the notice of abandonment was correct, unambiguous, and had taken effect with no further action on her part.

Edward Wolkowitz, Rona's bankruptcy attorney, testified that Rona's receipt of Dye's quitclaim deed to the Coffman Drive residence was not linked to Dye's receipt of Rona's quitclaim deed to the Randolph Street property. Wolkowitz testified that the Randolph Street property was linked, on the other hand, to the Crocker property, another asset in Frank's bankruptcy estate. According to Wolkowitz, the trustee's plan was to sell the Randolph and Crocker properties in the same tax year, so the tax basis of the Randolph property would offset the gain on the sale of the Crocker property. Wolkowitz testified that moving the Randolph property to the bankruptcy estate would create a surplus estate, which would make it more difficult for Dye to prove that the disputed transfers were fraudulent.

According to Wolkowitz, there was a nexus between the Randolph and Crocker properties, but not between the Randolph and Coffman properties. Wolkowitz testified that when he had asked for the trustee to quitclaim the Coffman property (at the family law attorney's request), he (Wolkowitz) believed there was an ambiguity as to whether the notice of abandonment was effective. In Wolkowitz's view, he would not have asked for, and the trustee would not have given, the quitclaim had there been no ambiguity. Wolkowitz testified that because the notice was ambiguous, "it still left the question of whether or not the abandonment was completed. And in the absence of an order that would have resolved that ambiguity[, ] the ambiguity remains."

Wolkowitz testified that unlike the ambiguous notice used by Dye, he (Wolkowitz) uses a notice that provides an unambiguous and, therefore, effective notice of abandonment, which states: " 'If no request for hearing is timely filed and served, the trustee may take the proposed action *and the trustee will be deemed to have abandoned any interest in the property 15 days from the date of mailing.'* That is what is missing from the Dye notice[, the] 'will be deemed to have abandoned 15 days[]' [language.] If that language is in there then the abandonment was effective . . . ." (Italics added.)

The court held Dye's attempt to abandon the Coffman Drive property was not effective due to the ambiguity in Dye's notice of abandonment. The court stated that "in order to have an effective abandonment you need [to] have some date. And that would have been much better practice I think had Ms. Dye put a date in it, and I think it would have changed the result. Had she used the language that Mr. Wolkowitz uses in his form of intent to abandon it makes it clearer to one and all that there is a[n] abandonment as of a certain time." Due to the ambiguity in the notice of abandonment, the court stated, "who knows what was really going on in the minds of the parties, but I think it was a more persuasive argument legally [that] there was no abandonment of the property[,] that the trustee still had the power to deed it as she did to Mrs. Gioia in connection with the settlement."

## DISCUSSION

Under the Bankruptcy Code, a "trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." (11 U.S.C. § 554(a).) Rule 6007(a) of the Federal Rules of Bankruptcy Procedure provides in relevant part that "[u]nless otherwise directed by the court, the trustee . . . shall give notice of a proposed abandonment . . . of property to . . . all creditors . . . . A party in interest may file and serve an objection within 15 days of the mailing of the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to other entities as the court may direct."

The local rules for the United States Bankruptcy Court for the Central District of California provide that the trustee, unless otherwise directed by the court, must give at least 15 days' notice of intent to abandon. ". . . If no objection and request for hearing is timely filed and served, the trustee may take the proposed action on the date specified in the notice of intent. However, no order shall be issued under this subsection. . . ." (U.S. Dist. Ct., Local Bankruptcy Rules, Central Dist. Cal., rule 6004-1(b).)

The notice of abandonment issued by Dye stated that on October 28, 1999, the trustee "will abandon to the debtor all of the estate's right, title, and interest in [the Coffman Drive residence] . . . [under] 11 U.S.C. [section] 554(a) on the grounds that [the property is] overencumbered and of inconsequential value and benefit to the estate. Pursuant to [former] Local Rule 9013-4 [presently renumbered as Local Rule 6004-1], the trustee *may* take the proposed action on the date specified above, without further hearing or order of the bankruptcy court, unless a timely objection or request for hearing is filed and served by any interested person. Any objection or request for hearing must be in writing and filed with the bankruptcy court . . . and served upon the trustee's counsel . . . not later than fifteen days from the date of service of this notice." (Italics added, underscoring in original.)

In the trial court's view, the notice's use of the word "may" in the phrase, "the trustee *may* take the proposed action on the date specified above" (italics added), denotes that the trustee *might* or *might not* abandon the property on the stated date. To eliminate this uncertainty, the trial court held, the language suggested by Wolkowitz should be added to the notice: "*and the trustee will be deemed to have abandoned any interest in the property 15 days from the date of mailing.*" (Italics added.)

The notice's use of the word "may," however, is not ambiguous when viewed in the context of the applicable abandonment statute and local rule.

The same phrasing, "may abandon" or "may take the proposed action," appears in both section 554(a) of the Bankruptcy Code ("trustee *may* abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit" (italics added)) and Local Bankruptcy Rule 6004-1(b) (". . . If no objection and request for hearing is timely filed and served, the trustee *may* take the proposed action on the date specified in the notice of intent. However, no order shall be issued under this subsection." (Italics added.)). In both instances, "may abandon" or "may take the proposed action" means that upon compliance with the notice requirements, the trustee is *authorized* to abandon the property. As used in this context, "*may* abandon" means "*authorized* to abandon," and does not mean "*might* or *might not* abandon."

In our view, the notice of abandonment unambiguously stated the trustee's intention to abandon the Coffman Drive property on October 28, 1999. The use of the word "may" is entirely consistent with that stated intention.

Nothing in the applicable statutes, rules, local rules, or case law, supports the trial court's determination that the trustee's notice was insufficient or that some further notice of abandonment was required upon the expiration of the notice period. The applicable Local Rules of the United States Bankruptcy Court for the Central District of California, unlike those for the Southern District, do not require the trustee to file a report of abandonment of real property. In the Southern District, Local Rule 6007-3(a)(2) provides: "Where a voluntary abandonment of real property is not contested in a timely manner, the trustee or debtor-in-possession shall file Local Form CSD 2018, *Report of Abandonment of Real Property.*" There is, however, no similar requirement in the applicable local rule in the Central District. In the Central District, a notice of abandonment of real property that meets the statutory and rules requirements is sufficient in the absence of an objection or request for hearing.

Although dated, *In re Yalden* (D. Mass. 1953) 109 F.Supp. 603, is helpful to our analysis. In *Yalden,* the bankruptcy trustee orally disclaimed title to the debtor's real property in 1939 because it had no equity. The debtor, in reliance on the trustee's oral abandonment, made the tax and mortgage payments on the property and claimed it as hers. In order to remove the cloud on her title due to the lack of a written disclaimer, the debtor had the bankruptcy proceedings reopened. In the reopened proceedings, the debtor purchased the property for $200 from the trustee and petitioned for confirmation of the sale. The referee confirmed the sale over the objections of a creditor, who claimed the sale was fraudulently conducted without notice to creditors or any appraisal of the property. In affirming the referee's order confirming the sale, the district court stated that due to the trustee's abandonment of the property in 1939, the estate no longer had any assets belonging to

it when the estate was reopened in 1952. The sale, the district court stated, did not change title but was a mere formality that confirmed title:

"A trustee in bankruptcy has the right to abandon property of the bankrupt, title to which has been vested to him, when such property is of no value to the estate. [Citation.] . . . In this case, the trustee in 1939 considered the property worthless to the estate, and the referee has found that in fact it was so. The trustee also plainly stated his intention to disclaim all title to the property. Hence, it must be held that the trustee did in fact abandon the real estate in question in 1939. [¶] Where property is thus abandoned by the trustee, title thereto reverts to the bankrupt. Moreover, the abandonment is irrevocable. Even though the property later becomes more valuable, the trustee has no right to reclaim it. [Citation.] Since 1939, therefore, the property in question has belonged to the bankrupt and not to the estate. The sale of the property by the trustee to the bankrupt was a mere formality which in no way affected the actual ownership of the property. Its only purpose was . . . to give the real owner a written confirmation of a transfer which had taken place in 1939, to remove any question arising from the fact that no written record evidenced the prior transfer. [¶] When the estate was reopened, there was in fact no asset which still belonged to it. There was nothing to be appraised, nothing to be applied to the benefit of the creditors. Nothing passed from the estate by the so-called sale, and any consideration paid by the bankrupt was pure gain to the estate." (*In re Yalden, supra,* 109 F.Supp. at p. 604.)

Similarly, in this case, the trustee's quitclaim deed had no effect on title, because the estate's interest in the Coffman Drive residence had reverted to Frank, the debtor, upon the trustee's abandonment in 1999. The quitclaim deed was a mere formality that confirmed, as Dye testified, the estate's lack of any claim against Rona's interest in the property.

■ According to Rona, Dye's conveyance of the quitclaim deed demonstrated that Dye believed there had been no abandonment and that Dye was exercising control over the Coffman Drive residence. A quitclaim deed, however, "transfers only whatever interest the grantors possess at the time of the conveyance. (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 496 [257 Cal.Rptr. 397] . . . ; 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property § 135, p. 351.)" (*Osswald v. Anderson* (1996) 49 Cal.App.4th 812, 820 [57 Cal.Rptr.2d 23].) By issuing the quitclaim deed, Dye was only transferring whatever interest the estate possessed at the time of conveyance, *if any.* As quitclaim deeds contain no implied warranty of title, Dye was not representing that the estate had an interest in the property. (See Miller & Starr, Cal. Real Estate (3d ed. 2003) § 8:12 ["A quitclaim deed does not contain any implied covenant or warranty of title, freedom from encumbrances, or the grantor's right of possession. It is often used to release all of

the interest that the grantor may have or claim to have in the property described at the time of the deed. It is a valid instrument even though the grantor does not have any estate or right to occupy the property. A quitclaim deed only transfers whatever interest the grantor had in the described property at the time the conveyance was made. Therefore, the quitclaim deed does not convey any after-acquired title received by the grantor subsequent to the quitclaim deed." (Fns. omitted.)].)

In our view, Dye's issuance of the quitclaim deed is consistent with her testimony that she believed the estate had abandoned the property and, therefore, the quitclaim deed had no effect on Frank's interest in the Coffman Drive property. Our determination that the trustee's October 1999, abandonment was unambiguous and, therefore, effective leads to the conclusion that the estate's interest in the Coffman Drive residence, having reverted to Frank, could not have been conveyed to Rona via the quitclaim deed. (11 U.S.C. § 362(c)(1); 3B Bankr. Service L. Ed., § 36:258.)[1]

■ We hold that because the bankruptcy estate had no title to or interest in the Coffman Drive residence after the abandonment, the trustee's quitclaim deed conveyed no title or interest to Rona. Whatever title Rona and Frank have to the property was unaffected by the quitclaim deed. Accordingly, the family law court erred in awarding the residence to Rona solely on the strength of the quitclaim deed. The order must be reversed and the property reallocated, in a just manner determined by the trial court based on a review of the evidence other than the quitclaim deed.

## DISPOSITION

The order is reversed and the matter remanded for further proceedings. The parties are to bear their own costs.

Spencer, P. J., and Vogel, J., concurred.

---

[1] When the estate abandoned its interest in the Coffman Drive residence, the automatic stay was no longer in effect as to the *estate's* interest in the property, but remained in effect as to the *debtor's* (Frank's) interest in the property. (3B Bankr. Service L. Ed., § 36:258 ["Trustee's abandonment of property of bankruptcy estate eliminates protection of automatic stay provisions of 11 USCA § 362(a) as to estate's interest in property; debtor, however, retains all of debtor's right, title, and interest in property as of date bankruptcy petition was filed and may seek any remedy available under state law . . . ."].) When the bank wrote to Frank and Rona (but not to the trustee) about the delinquency and possible foreclosure proceedings, Frank failed to object that the threat of imminent foreclosure was a violation of the automatic stay. Instead, Rona voluntarily cured the delinquency and assumed the mortgage payments. We find no inconsistency between these facts and our determination that the property was abandoned by the *estate*.