[No. G040241. Fourth Dist., Div. Three. June 22, 2009.]

WESTON JOHNSON et al., Plaintiffs and Respondents, v. E-Z INSURANCE BROKERAGE, INC., et al., Defendants; SHAHIN MOSAFERI, Claimant and Appellant.

[No. G040433. Fourth Dist., Div. Three. June 22, 2009.]

WESTON JOHNSON et al., Plaintiffs and Respondents, v. FARAMARZ KIASI, Defendant and Appellant.

**COUNSEL**

Casello & Lincoln and Danforth F. Lincoln for Claimant and Appellant and for Defendant and Appellant.

Law Offices of Michael D. McCaffrey and Michael D. McCaffrey for Plaintiffs and Respondents.

## OPINION

**FYBEL, J.—**

### INTRODUCTION

In these consolidated appeals, Shahin Mosaferi appeals from the order denying her petition to determine the validity of her third party claim, and Faramarz Kiasi appeals from the order denying his motion to set aside and vacate a default and default judgment. Both appeals arise out of a default judgment obtained by Weston Johnson, Wendy Johnson, and Larry Johnson (the Johnsons) against Kiasi in 1996 as a discovery sanction. The default judgment resulted in a judgment lien against real property owned by Kiasi. In 1999, after filing for bankruptcy, Kiasi conveyed the real property by quitclaim deed to Mosaferi without the authorization of the bankruptcy court or trustee.

In 2006, the Johnsons filed an application for renewal of the judgment. In her petition to determine validity of third party claim, Mosaferi argued the renewal did not extend the duration of the judgment lien against the property because the Johnsons did not personally serve the application for renewal on her pursuant to Code of Civil Procedure section 683.180. The trial court denied the petition and, in appeal No. G040241, we affirm. We hold Mosaferi was not a transferee of the property entitled to personal service of the application for renewal of the judgment because Kiasi, having filed a chapter 7 bankruptcy petition, had no interest in the property to convey to her. When Kiasi's bankruptcy proceeding closed, title to the property revested in Kiasi, and did not vest in Mosaferi, because the doctrine of after-acquired title does not apply to quitclaim deeds.

In 2008, Kiasi moved to set aside and vacate the default and default judgment entered in 1996 on the ground they were wrongly entered on an ex parte basis as a terminating sanction for misuse of the discovery process. The trial court denied the motion, and, in appeal No. G040433, we affirm. The default and default judgment were voidable, not void, and, therefore, under Code of Civil Procedure section 473, subdivision (b), a motion to set them aside had to be brought within six months of entry. Kiasi's motion, made 12 years after entry of the default and default judgment, was untimely.

FACTS AND PROCEEDINGS IN THE TRIAL COURT

## I.  *Default and Default Judgment*

In 1994, Weston Johnson and Wendy Johnson filed a complaint against Kiasi and E-Z Insurance Brokerage, Inc. (E-Z). The first amended complaint, filed in 1995, added Larry Johnson as a plaintiff and sought relief for breach of contract, fraud, and other causes of action. In the first amended complaint, the Johnsons alleged Kiasi, acting through E-Z, purported to sell them automobile insurance, and the Johnsons paid premiums on the policies that Kiasi supposedly procured for them. When the Johnsons incurred losses and attempted to recover under the policies, they learned the policies did not exist, leaving them with uninsured losses.

In June 1996, the Johnsons moved to compel Kiasi and E-Z to appear for their depositions and produce documents. The trial court granted the motion and set a hearing on an order to show cause regarding contempt for July 3, 1996, in the event the depositions were not completed by that date.

Kiasi appeared for his deposition but did not produce the documents requested. On July 3, 1996, at the hearing on the order to show cause regarding contempt, the court ordered Kiasi and E-Z to appear for deposition and produce documents without objection, and imposed monetary sanctions against them. The court stated it would entertain a motion regarding terminating sanctions if the monetary sanctions were not paid within 30 days.

Kiasi and E-Z did not comply with the court's order. On August 13, 1996, the Johnsons' counsel notified Kiasi's counsel that if documents were not produced by the next day, the Johnsons would seek terminating sanctions. No documents were produced. On August 14, the Johnsons' counsel provided ex parte notice to Kiasi and E-Z's counsel of an application to strike the answer or for evidentiary or monetary sanctions to be brought the next day.

On August 15, 1996, the Johnsons applied ex parte for an order to strike Kiasi and E-Z's answer or, alternatively, for further evidentiary or monetary sanctions. The trial court granted the application, struck Kiasi and E-Z's answer, and ordered Kiasi and E-Z to pay the Johnsons $1,500 in sanctions. Counsel for Kiasi and E-Z did not appear at the ex parte hearing, but were given notice of the court's order.

On December 20, 1996, following a default prove-up, a default and default judgment were entered against Kiasi and E-Z. The judgment awarded the Johnsons $159,871.35 in compensatory damages, punitive damages, costs, and attorney fees.

In enforcing the judgment, the Johnsons found only one asset of Kiasi: real property in Anaheim (the Property). In February 1997, the Johnsons had an abstract of judgment recorded against the Property and obtained a judgment lien against it. The Johnsons determined a forced sale of the Property would yield little, if any, proceeds because it was heavily encumbered and therefore decided to wait for the Property to increase in value.

## II.  *Kiasi's Bankruptcy*

Kiasi filed a chapter 13 bankruptcy petition in July 1998. The Johnsons filed opposition to Kiasi's chapter 13 plan. In December 1998, the bankruptcy court dismissed the petition.

Kiasi filed a chapter 7 bankruptcy petition in February 1999. The petition listed the Johnsons as unsecured creditors, but they were not given notice of the petition and did not learn of Kiasi's chapter 7 case until November 2005.

While the chapter 7 bankruptcy matter was pending, Kiasi conveyed the Property to his sister, Shahin Mosaferi, by means of a quitclaim deed recorded on May 13, 1999. The quitclaim deed was given without authorization of the bankruptcy court or Kiasi's bankruptcy trustee and without notice to the Johnsons.

An order discharging Kiasi from bankruptcy was entered on May 24, 1999, and the chapter 7 bankruptcy matter was closed on August 14, 2001.

In May 2005, Kiasi moved to reopen his chapter 7 bankruptcy case. The bankruptcy court granted the motion. In August 2006, Kiasi filed a motion to avoid liens, including the Johnsons' judgment lien against the Property. Kiasi contended he had a valid homestead exemption against the Property when he conveyed it to Mosaferi.

In an order dated September 28, 2006, the bankruptcy court denied the motion to avoid liens. The court concluded Kiasi did not have a continuing financial interest in the Property because he had not held title since he

quitclaimed it to Mosaferi. The court stated: "[W]e have the additional complication that this quitclaim occurred during the pendency of the bankruptcy case, before the trustee's report of 'no asset' was even filed and without benefit of a court order. This means the transfer was an unauthorized post petition transfer, but not one that can anymore be avoided given the length of time that has passed. [Citation.] This places neither debtor nor Ms. Mosaferi in an equitably sympathetic position before this court. Indeed, under the ancient adage, this Court of equity will leave these parties *in pari delicto* where it finds them." The court found Kiasi and Mosaferi "do not come to the court with the kind of 'clean hands' which might test the outer limits of equity's forbearance," and "this motion seems to be a transparent attempt to utilize the 'fresh start' provisions of the Bankruptcy Code for an impermissible purpose, i.e., as a title reformation device for the non-debtor, unauthorized transferee, debtor's sister."

In September 2006, while Kiasi's motion to avoid liens was pending, the Johnsons applied for an order of sale of the Property. Mosaferi appeared as "Defendant and Respondent" and opposed the application. The trial court granted the Johnsons' application and, in January 2007, entered an order for sale of dwelling pursuant to Code of Civil Procedure section 704.780, subdivision (b).

### III. *Application to Renew Judgment and Motion to Set Aside and Vacate Default and Default Judgment*

In November 2006, the Johnsons filed an application for renewal of the judgment. The application was served by mail on Kiasi and Mosaferi. The renewed judgment was recorded in December 2006.

In April 2007, Mosaferi submitted a "Third Party Claim of Ownership" to the Orange County Sheriff, asserting she had acquired an ownership interest in the Property by the quitclaim deed recorded May 13, 1999, and her rights in the Property were senior to those of the Johnsons. Mosaferi also filed a petition of third party claimant to determine the validity of third party claim and disposition of the Property. The Johnsons filed opposition to the petition, and a hearing was held in January 2008.

The trial court denied Mosaferi's petition, concluding, "[t]he Third Party Claim of Shahin Mosaferi is invalid." In its tentative ruling, the court stated: "The quitclaim deed did not transfer an interest in the property to the moving

party. The judgment debtor did not have an interest in the property at the time of the transfer in light of the bankruptcy. Accordingly, an[y] defects in the service of the application for renewal of the judgment did not affect the responding party's lien of the property." A judgment against Mosaferi on her petition of third party claimant was filed, and notice of entry of judgment was served, in February 2008.

In February 2008, Kiasi filed a motion to set aside and vacate the default and default judgment entered in 1996. Kiasi asserted the default judgment was void because it resulted from a terminating sanction imposed ex parte. The trial court denied the motion. In its tentative ruling, the court stated: "Any errors committed by the trial court in entering the default and default judgment were acts in excess of the court's jurisdiction. The court had fundamental jurisdiction over the subject matter and parties. Accordingly, the judgment was merely voidable and subject to the defenses of waiver, estoppel and laches."

Mosaferi appealed from the order on her petition of third party claimant (appeal No. G040241). Kiasi appealed from the order denying his motion to set aside and vacate the default and default judgment (appeal No. G040433). The two appeals were consolidated. We granted Kiasi's motion to delete Mosaferi as a party and add Kiasi as the proper appellant in appeal No. G040433.

Discussion

### I. *Mosaferi's Appeal: Order Denying Petition of Third Party Claimant Is Affirmed.*

In November 2006, the Johnsons filed an application for renewal of the judgment. Code of Civil Procedure section 683.180 requires personal service of an application for renewal of a judgment on any "transferee" of property subject to a judgment in order to extend the duration of the lien.[1]

---

[1] Code of Civil Procedure section 683.180 provides: "(a) If a judgment lien on an interest in real property has been created pursuant to a money judgment and the judgment is renewed pursuant to this article, the duration of the judgment lien is extended until 10 years from the date of the filing of the application for renewal if, before the expiration of the judgment lien, a certified copy of the application for renewal is recorded with the county recorder of the county where the real property subject to the judgment lien is located. [¶] (b) A judgment lien on an interest in real property that has been transferred subject to the lien is not extended pursuant to subdivision (a) if the transfer was recorded before the application for renewal was filed unless both of the following requirements are satisfied: [¶] (1) A copy of the application for renewal is personally served on the transferee. [¶] (2) Proof of such service is filed with the court clerk within 90 days after the filing of the application for renewal."

Kiasi transferred the Property to Mosaferi by quitclaim deed recorded before the application for renewal of the judgment was filed. The Johnsons concede they did not personally serve their application on Mosaferi. They contend she was not a valid transferee entitled to personal service under Code of Civil Procedure section 683.180. This contention is based on the premise that when Kiasi filed his chapter 7 bankruptcy petition, title to the Property passed to the bankruptcy estate and, therefore, Kiasi had no interest to convey to her. In response, Mosaferi contends the quitclaim deed effectively conveyed the Property to her, notwithstanding Kiasi's bankruptcy.

For the reasons we explain, we agree with the Johnsons, and hold Mosaferi was not a transferee of any interest in the Property and was not entitled to personal service of the application for renewal of the judgment.

A.  *Kiasi Had No Interest to Convey After Filing for Bankruptcy.*

■ "Under [11 United States Code] section 541, once the estate is created, no interests in property of the estate remain in the debtor." (5 Collier on Bankruptcy (15th ed. rev. 2009) ¶ 541.04.) Once the bankruptcy case closes, title to any nonadministered property of the estate revests in the debtor. (*In re Cady* (Bankr. 9th Cir. 2001) 266 B.R. 172, 182, affd. (9th Cir. 2003) 315 F.3d 1121 (*Cady*).)

■ Under the doctrine of after-acquired title, "[w]here a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title, or claim of title thereto, the same passes by operation of law to the grantee, or his successors." (Civ. Code, § 1106.) Accordingly, when a debtor purports to convey bankruptcy estate property, title to the property will vest in the grantee when the bankruptcy proceedings close if the property was nonadministered. (See *Cady, supra,* 266 B.R. at p. 182.) A quitclaim deed does not, however, convey after-acquired title. (*In re Marriage of Gioia* (2004) 119 Cal.App.4th 272, 281 [14 Cal.Rptr.3d 362]; *Soares v. Steidtmann* (1955) 130 Cal.App.2d 401, 403 [278 P.2d 953]; *Buller v. Buller* (1944) 62 Cal.App.2d 694, 699 [145 P.2d 653].)

Under these principles, when Kiasi filed his chapter 7 bankruptcy petition, the Property became property of the bankruptcy estate pursuant to 11 United States Code section 541. From that point, Kiasi held no more than record title to the Property. (*Cady, supra,* 266 B.R. at p. 181.) Conveyance of the quitclaim deed to Mosaferi failed to convey any interest in the Property. Once

the bankruptcy matter closed, title to any nonadministered property of the estate (including the Property) revested in Kiasi. (*Id.* at p. 182.) Because the after-acquired title doctrine does not apply to quitclaim deeds, no title passed to Mosaferi when title to the Property revested in Kiasi. Since Mosaferi owns no interest in the Property, she was not a transferee entitled to personal service of the application for renewal of the judgment.

## B. Cady *and* Tippett

In *Cady, supra,* 266 B.R. 172, 176, the debtor filed a chapter 7 bankruptcy petition and represented he would surrender real property he owned with his wife to the holders of deeds of trust on the property. Instead, while the bankruptcy case was open, the debtor and his wife transferred their interests in the property to the second trust deed holder (the debtor conveyed by grant deed, and his wife conveyed by quitclaim deed). Neither the bankruptcy court nor the trustee knew of the transfer. (*Ibid.*) Meanwhile, a creditor filed a complaint in the debtor's bankruptcy proceeding to have its unsecured claim declared nondischargeable. (*Id.* at p. 177.) The complaint resulted in a stipulated judgment determining the creditor's claim to be nondischargeable. The creditor recorded an abstract of judgment two days after the deed to the second trust deed holder was executed, but before the deed was recorded. The debtor received a discharge in bankruptcy two weeks later and his case was closed. (*Ibid.*)

Later, the creditor assigned the judgment to William Klapperman. (*Cady, supra,* 266 B.R. at p. 177.) The second trust deed holder sold the property to Jeffrey Palm and Dannielle Scapparo. The debtor defaulted on the stipulated judgment, and Klapperman took steps to execute on the property. Palm and Scapparo moved to reopen the debtor's bankruptcy case, annul the automatic stay, and have the bankruptcy court determine the recordation of the abstract of judgment violated the automatic stay. The bankruptcy court reopened the case but concluded the recordation of the abstract of judgment did not violate the automatic stay. (*Id.* at pp. 177–178.)

Affirming, the Ninth Circuit Bankruptcy Appellate Panel concluded the recordation of the abstract of judgment did not violate the automatic stay because it attached only to whatever interest the debtor had in the property. (*Cady, supra,* 266 B.R. at p. 181.) At the moment the debtor filed his bankruptcy petition, all of the debtor's property became property of the bankruptcy estate. (*Ibid.*) The lien created by the abstract of judgment could only attach to whatever interest the debtor had in the property: Since the debtor had no interest after filing the bankruptcy petition, no interest attached. When the bankruptcy case closed, title to the property reverted to the debtor, and, at that moment, the abstract of judgment attached to the property under the doctrine of after-acquired title. (*Id.* at p. 182.)

Relying on *In re Tippett* (9th Cir. 2008) 542 F.3d 684 (*Tippett*), Mosaferi argues Kiasi retained an " 'inchoate' " right to revestment of title to any nonadministered estate assets at the close of the bankruptcy proceeding, and that right could be conveyed to her. In *Tippett*, the debtors filed a chapter 7 bankruptcy petition listing a family residence as an asset. (*Id.* at p. 687.) Without authorization from the trustee or bankruptcy court, the debtors conveyed the residence by grant deed to Seitu Coleman, whom all agreed was a bona fide purchaser without notice of the bankruptcy proceedings. The debtors received a discharge in bankruptcy. On learning of the conveyance to Coleman, the trustee filed an adversary proceeding against the debtors and Coleman to recover the sale proceeds, to avoid the lenders' liens, and to quiet title, and sought to revoke the debtors' discharge. The bankruptcy court held the grant deed to Coleman and the lenders' liens were void *ab initio* as violations of the automatic bankruptcy stay. The bankruptcy appellate panel reversed the bankruptcy court, concluding the transfer was voidable rather than void, and the trustee's action was subject to a defense for bona fide purchasers. (*Id.* at pp. 687–688.)

The Ninth Circuit Court of Appeals affirmed the bankruptcy appellate panel's decision by reaching three conclusions. First, the Ninth Circuit concluded Civil Code section 1214 renders an unrecorded conveyance void as to subsequent bona fide purchasers who record their titles. (*Tippett, supra,* 542 F.3d at p. 688.) The transfer of the debtors' residence to the bankruptcy estate was such an unrecorded conveyance and therefore was void as to Coleman, a bona fide purchaser without knowledge of the bankruptcy proceeding. "There can be no question, therefore, that, if the California statute applies, the transfer to Coleman is effective, despite the absence of a property interest in the [debtors]." (*Ibid.*) The court stated its conclusion was "unaffected" by *Cady* because, in that case, the court "determined that a debtor retained no interest in property following a particular property transfer," but the determination was made "for wholly different purposes and did not involve the validity of a transfer by a debtor to a bona fide purchaser." (*Ibid.*)

Second, the Ninth Circuit concluded the federal Bankruptcy Code did not preempt the California statute protecting bona fide purchasers such as Coleman. (*Tippett, supra,* 542 F.3d at p. 689.) A bankruptcy trustee can protect the estate and creditors from unforeseen conveyances by recording the debtor's chapter 7 bankruptcy petition or a notice of bankruptcy. (*Id.* at p. 690.)

Third, the Ninth Circuit concluded the automatic stay did not render the transfer from the debtors to Coleman void. (*Tippett, supra,* 542 F.3d at pp. 690–691.) The automatic stay provision of 11 United States Code section

362, under which transfers of estate property are void, does not apply to sales or transfers initiated by the debtor. Transfers of bankruptcy estate property initiated by the debtor are therefore voidable, not void, and subject to California law regarding bona fide purchasers. (*Tippett*, at p. 691.)

The reasoning and language of *Tippett* do not support Mosaferi's interpretation. *Tippett* does not mention an "inchoate" right to revestment of title to nonadministered property, and we would decline to follow *Tippett* if it did. "Whether a property interest exists is a matter of state law" (*In re Roosevelt* (9th Cir. 1996) 87 F.3d 311, 319), and California law does not recognize such an inchoate right or estate.

*Tippett* and *Cady* appear to be inconsistent. The *Tippett* court attempted to reconcile *Cady* by stating the debtor in *Cady* "retained no interest in property following a particular property transfer" (*Tippett, supra*, 542 F.3d at p. 688); however, the "particular property transfer" in *Cady* was the transfer of the debtor's assets to the bankruptcy estate upon the filing of a chapter 7 bankruptcy petition. The same type of property transfer occurred in *Tippett*. The *Tippett* court also distinguished *Cady* on the ground that case did not involve the validity of a transfer by a debtor to a bona fide purchaser. This distinction makes sense only in light of the after-acquired title doctrine. Since a debtor has no interest in the bankruptcy estate property, conveyance to a purchaser (whether bona fide or not) would convey nothing until the bankruptcy case is closed, and title to nonadministered property revests in the discharged debtor.

We interpret *Tippett* to mean that when a bankruptcy petition is unrecorded, the debtor retains the ability to convey estate assets by grant deed to bona fide purchasers who do not have knowledge of the bankruptcy proceedings, and that conveyance will be valid *but only as against the claims of the bankruptcy trustee. Tippett* does not address whether that conveyance would be valid if made to a purchaser with knowledge of the bankruptcy proceeding or would be valid against claims made by creditors. Interpreted this way, *Tippett* can be reconciled with *Cady*.

Applying *Tippett* and *Cady* to this case, three significant facts lead us to confirm our conclusion Mosaferi had no interest in the Property. First, she received a quitclaim grant deed, and, therefore, she cannot invoke the doctrine of after-acquired title. Mosaferi received only what Kiasi had, which was nothing. In both *Tippett* and *Cady*, the conveyance was made by grant deed.

Second, Mosaferi submitted no evidence to the trial court and did not assert she was a bona fide purchaser for value and did not know of Kiasi's

bankruptcy when the quitclaim deed was conveyed to her. The bankruptcy court found Mosaferi and Kiasi were in pari delicto and they "do not come to the court with the kind of 'clean hands' which might test the outer limits of equity's forbearance."

Third, unlike *Tippett*, Mosaferi is not asserting validity and priority of title against a claim by the bankruptcy trustee. Rather, as in *Cady*, she is asserting rights vis-à-vis a creditor with a prior recorded claim.

## II. *Kiasi's Appeal: Order Denying Motion to Set Aside Default and Default Judgment Is Affirmed.*

Kiasi moved to set aside and vacate the 1996 default and default judgment 12 years after their entry. He argues the motion was timely, and the trial court erred by denying it, because the default judgment was void, not voidable. The default judgment is void, Kiasi argues, because it was the result of a terminating sanction issued on an ex parte basis.

■ Under Code of Civil Procedure section 473, subdivision (b), a motion to vacate a default and default judgment must be brought within six months of entry of the default judgment. ■ Section 473, subdivision (d) allows a trial court to set aside a void judgment without mentioning a time limit. (*Lee v. An* (2008) 168 Cal.App.4th 558, 563 [85 Cal.Rptr.3d 620].)

■ "A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable." (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56 [14 Cal.Rptr.3d 50, 90 P.3d 1209].) A judgment is void if the court lacked jurisdiction over the subject matter or parties, for example, if the defendant was not validly served with summons. (*Neumann v. Melgar* (2004) 121 Cal.App.4th 152, 164 [16 Cal.Rptr.3d 754].) In contrast, a judgment is valid but voidable if it is the result of the court's failure to follow proper procedure. (*Ibid.*)

Here, the trial court had fundamental jurisdiction over both the subject matter and the parties when the default judgment was entered in 1996. By awarding terminating sanctions on an ex parte basis, the trial court at most failed to follow proper procedure.

Relying on *Sole Energy Co. v. Hodges* (2005) 128 Cal.App.4th 199 [26 Cal.Rptr.3d 823] (*Sole Energy*), Kiasi argues a default and default judgment are void if they result from an order granting terminating sanctions on an ex parte basis. In *Sole Energy*, we reversed the defaults and default judgments entered pursuant to an order, granted ex parte, that awarded terminating

sanctions for discovery abuses. We concluded, "[d]iscovery sanctions may not be ordered ex parte, and an order purporting to do so is void." (*Id.* at p. 208.) Since the order granting terminating sanctions was void, we concluded the orders entering the defendants' defaults and the default judgments also were "void." (*Id.* at p. 210.)

However, the defendants in *Sole Energy* moved to set aside the defaults and default judgments within 90 days of their entry. (*Sole Energy, supra*, 128 Cal.App.4th at pp. 205–206.) The defendants moved for relief under both subdivisions (b) and (d) of Code of Civil Procedure section 473. We therefore had no need to distinguish between void and voidable judgments to reach our decision.

In *Lee v. An, supra*, 168 Cal.App.4th 558, 561, the defendant moved under Code of Civil Procedure section 473, subdivision (d) to set aside a default judgment entered after the trial court struck her answer and entered her default as a sanction for her failure to appear at a case management conference. Relying on *Sole Energy*, the defendant argued the default and default judgment were void, not voidable, because the trial court did not give her notice it was considering imposition of terminating sanctions. (*Lee v. An*, at pp. 561, 566.) The Court of Appeal, affirming, concluded the default and default judgment were voidable because "the court had fundamental jurisdiction over the parties and the subject matter, but acted in excess of its jurisdiction by imposing terminating sanctions without adequate prior notice." (*Id.* at p. 565.) The Court of Appeal accurately explained the meaning of *Sole Energy*: "Appellant relies on *Sole Energy* . . . , in which the court held that orders imposing terminating sanctions for discovery violations without adequate prior notice were void. But no issue was raised in *Sole* about the timeliness of the motions for relief from the invalid orders. In using the term 'void,' the court in *Sole* did not have to distinguish void or voidable orders for the purpose of deciding whether relief could be sought after the six-month period in [Code of Civil Procedure] section 473, subdivision (b)." (*Lee v. An*, at p. 566.) As the court that decided *Sole Energy*, we agree with *Lee v. An*'s analysis of that case.

The default and default judgment against Kiasi were not void, but at most were voidable, because the trial court had fundamental jurisdiction over the parties and the subject matter. Kiasi therefore could not challenge the default and default judgment under Code of Civil Procedure section 473, subdivision (d), and, Kiasi having waited 12 years, his motion to set aside the default and default judgment under section 473, subdivision (b) was untimely.

## Disposition

The order denying Mosaferi's petition of third party claimant is affirmed. The order denying Kiasi's motion to set aside and vacate default and default judgment is affirmed. Respondents to recover costs incurred on appeal.

Bedsworth, Acting P. J., and Aronson, J., concurred.