Filed 6/26/15  Lusk v. Phan CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SHALANI LUSK, | |
|    Plaintiff and Respondent, | G049490 |
|      v. | (Super. Ct. No. 30-2011-00513244) |
| CHAU PHAN et al., | O P I N I O N |
|    Defendants and Appellants. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Robert J. Moss, Judge.  Reversed and remanded.

Wilson Harvey Browndorf, Marc Y. Lazo and Daniel I. Singer for Defendants and Appellants.

Law Offices of Lisa L. Maki and Lisa L. Maki for Plaintiff and Respondent.

\*       \*       \*

The trial court immediately struck the answer and entered the default of defendants who failed to comply with plaintiff's notice to appear at trial with specified documents. (See Code Civ. Proc., § 1987, subds. (b), (c).)[1] We conclude the court erred by refusing to grant defendants' motion for relief from mistake, inadvertence, surprise, or excusable neglect. (§ 473, subd. (b).)

FACTS

*Pleadings*

In October 2011, plaintiff Shalani Lusk filed a complaint against defendants (1) Chau Phan, (2) Pathway Financial Management, Inc., (3) First Source Financial Management, Inc., and (4) Pathway Marketing, Inc.[2] Plaintiff alleged statutory and common law causes of action arising out of plaintiff's employment by defendants: discrimination, harassment, retaliation, wrongful termination, fraudulent inducement, misclassification of an employee as an independent contractor, failure to pay wages, failure to provide itemized wage statements, waiting time penalties, unfair competition, and defamation. Plaintiff alleged that Phan (plaintiff's boss) and the corporate defendants (plaintiff's joint employer) were alter egos of one another. The complaint sought unspecified compensatory and punitive damages, as well as statutory penalties and attorney fees.

In December 2011, defendants filed a timely answer, generally denying all of the allegations in the complaint pursuant to section 431.30.

---

[1] Unless indicated otherwise, all statutory references are to the Code of Civil Procedure.

[2] Actually, Pathway Marketing, Inc. was added later as a doe defendant, but this fact is inconsequential to the appeal.

In October 2012, plaintiff served a statement of damages (§§ 425.11, 425.115), reserving the right to seek $1 million in special damages, $1 million in general damages, and $10 million in punitive damages against defendants. The parties dispute whether proper service of this document occurred, an issue we explore in further detail in the discussion section.

*Notices to Appear at Trial With Documents*

On November 6, 2012, plaintiff served defendants with notices to appear at trial with specified evidence (§ 1987, subds. (b), (c)). The trial was, at that time, scheduled for December 3, 2012.

On November 16, 2012, Phan filed for bankruptcy protection. This resulted in confusion and delay. The trial was reset for June 17, 2013 as against defendants other than Phan. Then, on May 24, 2013, the bankruptcy court dismissed Phan's case and lifted the automatic stay based on Phan's failure to appear for examination at a meeting of creditors. Hence, all parties were available for trial in June 2013.

Plaintiff again served defendants with notices to appear at trial (this time, on June 17, 2013) with specified evidence (§ 1987, subds. (b), (c)). Specified documents included corporate minute books and documents evidencing the financial condition and net worth of each of the defendants for purposes of proving punitive damages (i.e., "tax returns, bank statements, stocks and bonds, deeds of trust, income and expense reports, balance sheets, asset statements, and profit and loss statements").

*Trial*

Trial commenced on June 18, 2013. Before jury selection, plaintiff's counsel highlighted the fact that Phan was not present and that he had not provided any of the records requested pursuant to section 1987. Plaintiff's counsel explained that the documents were relevant both to punitive damages and to alter ego issues. Apparently,

3

defendants failed to move to bifurcate the punitive damages phase pursuant to Civil Code section 3295, subdivision (d).

Defense counsel responded, "He could be here immediately. The documents — I have talked with him several times about. Both of these companies are out of business and he doesn't have the records that have been requested." Defense counsel did not address Phan's personal financial documents. Questioned by the court, defense counsel admitted he had not filed a formal response to the subpoenas. Defense counsel agreed with the court's characterization of his position, "you're making your response on the record that he'll be here, but he has none of the records that are requested."

After this discussion, jury selection occurred. The parties then made their opening statements. Plaintiff began her case-in-chief with her own testimony. Covering approximately 150 pages of the reporter's transcript, plaintiff testified to alleged wrongdoing by defendants and the harm she allegedly suffered.

Next, and still on June 18, plaintiff called defendant Phan as an adverse witness. Phan briefly testified on June 18 concerning several preliminary matters. Phan's testimony continued into June 19. When asked whether he had any of the documents he was asked to bring, Phan testified, "Again, when I moving my company, That's almost last day of the company when I — when I pack everything together because landlord eviction, I put everything in a box, many, many boxes. I cannot identify them." The documents were in storage, in boxes, but Phan "could not identify them." He looked for them, but "could not locate any of them." The storage facility is in Santa Ana, California. The corporate defendants maintained "very good record[s] of formal meetings" but those records are "in those boxes." As far as bank statements, "it is very difficult to produce them and costly also." Phan did not bring any of his personal financial records because he "could not locate them" in his apartment. In sum, Phan's testimony supported an inference that he (on his own behalf and on behalf of the

4

corporate defendants) had not taken seriously his obligation to procure and produce documents pursuant to the notices.

*Motion to Strike Answer Granted as Sanction for Failure to Produce Documents*

At the end of plaintiff's questioning of Phan, the court went off the record. Once back on the record, plaintiff made an oral motion to strike the answers of defendants and to proceed to a default judgment. "It's clear that at least six notices to appear have been violated . . . . This is a violation of court orders, it is just like violating a subpoena, contempt may be an issue, and we would request that, but we understand that that may not be something the court wants to do, so we would request that the court strike the answers of all of the defendants at issue in this case, discharge the jury and proceed in default against all three defendants."

Defense counsel, offered the opportunity to respond orally, stated: "I feel that striking his answer is too extreme. All of the evidence that was not produced relates just to the punitive damage phases. In discovery he produced lots of documents relating to the discrimination, the harassment issues. Everything has been produced except for relating to damages and punitives, which might not even become relevant if the jury finds against the plaintiff. I think that if some sanctions are warranted a lesser sanction such as striking his testimony and not allowing him to continue to testify and allowing the jury to decide based on the evidence they have heard so far would be a better option."

The court granted the motion, struck the answers, discharged the jury, and allowed the matter to proceed to a default judgment. It considered the notices to appear and produce documents to be equivalent to subpoenas, and considered subpoenas to be equivalent to court orders. The court found Phan had violated court orders numerous times by his failure to comply with the notices. These violations affected plaintiff's ability to prove both alter ego and punitive damages. "[A] strong sanction is in order

5

because his disobedience of the court's order has made it practically impossible for plaintiffs to prove alter ego. I am not going to let that proceed."

Plaintiff enumerated her alleged compensatory damages and the court awarded all damages based on evidence it had already heard (e.g., plaintiff's testimony). The court also found Phan was the alter ego of the defendant corporations. There was no evidence of defendants' net worth. But the court awarded punitive damages by doubling the amount of compensatory damages, reasoning that defendants should not profit by their violation of the notices.

Judgment was entered against defendants on June 26, 2013, awarding plaintiff $675,780 in compensatory damages, $1,351,560 in punitive damages, $11,283.33 in statutory penalties, and $378,681.27 in prejudgment interest for a total of $2,417,304.60.

*Court Denies Motion to Vacate Default*

On September 16, 2013, defendants moved pursuant to section 473, subdivisions (b) and (d), to vacate the default and default judgment. The court denied the motion on November 15, 2013. On January 2, 2014, defendants appealed from the order denying this motion.

DISCUSSION

Before proceeding to defendants' appellate contentions, it is helpful to note the limits of this appeal. First, defendants are not appealing the judgment itself, only the court's order denying relief under section 473. Defendants did not file a timely notice of appeal from the judgment. Judgment was entered on June 26, 2013. Notice of entry of judgment was filed and served by mail on July 3, 2013. Defendants' notice of appeal was filed on January 2, 2014, and it referenced only the court's order denying the motion to

6

vacate the default or set aside a void judgment (not the judgment itself). Defendants'
brief does not suggest they are appealing from the judgment. The lack of an appeal from
the judgment precludes a direct assault on the merits of the court's terminating sanctions
order, which led to the default judgment.[3]

Second, defendants' section 473, subdivision (b), motion did not include a
cognizable request for mandatory relief based on attorney error. Section 473, subdivision
(b), requires courts to vacate the entry of default and ensuing default judgments if, within
six months after entry of default, an application for relief is made in proper form,
"accompanied by an attorney's own sworn affidavit attesting to his or her mistake,
inadvertence, surprise, or neglect." Here, defendants' counsel at the time of trial, Randall
Baker, did not submit a declaration in support of the section 473 motion. Instead,
defendants and their current counsel, Marc Lazo, submitted declarations in support of the
motion. Thus, although defendants requested relief based on their prior counsel's
neglect, surprise, and mistake, the court could not provide mandatory relief on this
ground. Defendants do not suggest otherwise in their appellate briefs.

*Judgment is Not Void For Lack of Notice of Damages Amount*

"The court . . . may, on motion of either party after notice to the other party,
set aside any void judgment or order." (§ 473, subd. (d).) Courts have "authority to set
aside" a void judgment pursuant to section 473, subdivision (d), at any time. (*Heidary v.
Yadollahi* (2002) 99 Cal.App.4th 857, 862.)

Defendants first contend the default judgment is void because defendants
were not put on adequate notice of the amount demanded by plaintiff. A failure to
provide notice prior to default of the amount of damages sought precludes the recovery of

---

[3] This point is related to an argument raised by plaintiff and accepted by the
trial court in denying defendants' section 473 motion. To the extent defendants' motion
was really one for reconsideration of the court's prior ruling pursuant to section 1008, it
was brought to late (three months later) pursuant to the wrong statute (§ 473).

damages pursuant to a default judgment. "The relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115 . . . ." (§ 580, subd. (a); see also § 585, subds. (a), (b).) "[A] default judgment greater than the amount specifically demanded is void as beyond the court's jurisdiction." (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826.) "[A]ctual notice of the damages sought is not sufficient; due process requires 'formal notice.'" (*Stein v. York* (2010) 181 Cal.App.4th 320, 326.)

"This rule applies to defaults entered as a terminating sanction for misuse of the discovery process — the situation here — as well as to routine defaults, where a defendant fails to file an answer." (*Simke, Chodos, Silberfeld & Anteau, Inc. v. Athans* (2011) 195 Cal.App.4th 1275, 1286.) "[D]ue process requires notice to defendants, whether they default by inaction or by wilful obstruction, of the potential consequences of a refusal to pursue their defense. Such notice enables a defendant to exercise his right to choose — at any point before trial, even after discovery has begun — between (1) giving up his right to defend in exchange for the certainty that he cannot be held liable for more than a known amount, and (2) exercising his right to defend at the cost of exposing himself to greater liability." (*Greenup v. Rodman*, *supra*, 42 Cal.3d at p. 829.)

Ordinarily, "[i]f the recovery of money or damages is demanded [in a complaint], the amount demanded shall be stated [in the complaint]." (§ 425.10, subd. (a)(2).) However, a complaint may not "state an amount" of punitive damages sought. (Civ. Code, § 3295, subd. (e).) Similarly, "where an action is brought to recover actual or punitive damages for personal injury or wrongful death, the amount demanded shall not be stated [in the complaint]." (§ 425.10, subd. (b).) Instead, a plaintiff may serve a statement notifying defendant of the specific amount plaintiff intends to seek for personal injury or punitive damages. (§§ 425.11, 425.115.) "The statement . . . shall be served in the following manner: [¶] (1) If a party has not appeared in the action, the statement shall be served in the same manner as a summons. [¶] (2) If a party has appeared in the

8

action, the statement shall be served upon the party's attorney, or upon the party if the party has appeared without an attorney, in the manner provided for service of a summons or in the manner provided by" section 1010 et seq. (§ 425.11, subd. (d); see also § 425.115, subd. (g).)

In this case, plaintiff did not specify any of her alleged damages in the complaint. Plaintiff instead served (well before the default at issue) a statement of damages, which specified she was seeking $1 million in general damages, $1 million in special damages, and $10 million in punitive damages (amounts well in excess of those actually awarded by the court in the judgment). The court found "[p]laintiff has established that she served a Statement of Damages pursuant to . . . sections 425.11 and 425.115 upon Defendants in October 2012 . . . ." The primary question on appeal is whether this finding was supported by substantial evidence. To answer this question, we must describe in some detail the events of October and November 2012.

On October 9, 2012, defendants served substitution of counsel forms, indicating they would represent themselves in the litigation and their former counsel was substituting out of the case. These substitution of counsel forms listed the same address for each defendant: 15496 Magnolia Street #109, Westminster, California, 92683.

An October 17, 2012 proof of service stated plaintiff served by mail the statement of damages directly on defendants, at the same address in Westminster listed in the substitution of counsel forms. An attorney declaration affirmed service was made on these defendants on October 17, in contemplation of a motion to strike the answer of the corporate defendants should they not retain counsel. But in his declaration, Phan stated, "During the time when I did not have a lawyer, I do not remember receiving any documents from Shalani's lawyer."

Coincidentally, also on October 17, 2012, Baker served a series of substitution of counsel forms by mail, which indicated he was the new attorney for defendants. Plaintiff's counsel's declaration stated that an October 18, 2012 email from

9

Baker represented he had filed the substitution of counsel forms. The forms were not actually received by plaintiff's counsel until October 22, 2012.

A proof of service dated November 7, 2012 indicated Baker was served with the statement of damages by overnight mail. The attorney declaration filed by plaintiff in opposition to the motion to vacate, however, said nothing about this separate purported service and the parties' motion papers and appellate briefs ignored this November 7 proof of service. An attorney declaration included as part of defendants' moving papers recited the following hearsay: "I learned from [Baker] that none of the three Defendants was ever served by Plaintiff with a statement of the demanded compensatory or/and punitive damages . . . ." Defendants did not obtain a declaration from Baker in support of their motion.

We conclude the court's factual finding was supported by substantial evidence. Plaintiff submitted an authenticated copy of the statement of damages with an attached proof of service indicating defendants were served by mail. The statement of damages was appropriately served directly on the parties on October 17, 2012, because the parties had appeared in the action and did not have attorneys at that time. The court was entitled to disbelieve Phan's tepid reply declaration, denying that he remembered receiving any documents at that time. Defendants also argue (without any case authority) that sections 425.11 and 425.115 require service in the same manner as a summons because they lacked counsel on October 17, 2012, but those sections actually authorize service under any method for parties who have appeared in the action as their own counsel, including by United States mail (§§ 1012, 1013).

Moreover, even if plaintiff's initial attempt to serve defendants directly was invalid, her November 7, 2012 service of defendants' counsel at the time, Baker, was clearly valid on its face. For whatever reason, plaintiff did not emphasize this proof of service in her papers. But it was an authenticated document in the record. And defendants did not obtain a declaration from Baker claiming he had not been served with

10

the statement of damages; defendants instead relied on an inadmissible hearsay declaration from their current counsel stating that Baker claimed defendants had not been served with a statement of damages.  In sum, the record supports the court's conclusion that defendants were put on formal notice of the amounts requested by way of the statement of damages.

Although not argued by defendants, one question remains with regard to the damages amount in the judgment.  Was it proper for plaintiff to utilize a section 425.11 statement of damages, even though the use of such statements is limited to actions "to recover damages for personal injury or wrongful death"?  (§ 425.11, subd. (b).)  At least two cases have reversed default judgments as void when the plaintiff improperly relied on a section 425.11 statement of damages to notify defendant of damages claimed in a case not involving personal injury or wrongful death.  (*Levine v. Smith* (2006) 145 Cal.App.4th 1131, 1136-1137 [trial court properly set aside void judgment in legal malpractice case]; *Electronic Funds Solutions, LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1168, 1176-1177 [reversing default judgment in case involving trade secret misappropriation and other business torts].)  "[C]ourts have subjected section 580 to a 'strict construction.'  [Citation.]  Strictly construed, serving a statement of damages cannot satisfy section 580 in an action not involving personal injury or wrongful death." (*Id.* at p. 1176.)

Does this action involve personal injury or wrongful death?  No one died, so wrongful death is obviously off the table.  Is this a personal injury claim?  Our Supreme Court held in a housing discrimination case that the plaintiffs' claim was one for personal injury under section 425.10 because mental and emotional distress damages were "at the heart of their action" and not merely "'incidental'" to their claims.  (*Schwab v. Rondel Homes, Inc.* (1991) 53 Cal.3d 428, 432.)  The damages awarded in the judgment here were as follows:  (1) $175,000 in lost past wages; (2) $200,000 in lost future wages; (3) $6,900 in lost medical and dental benefits; (4) $20,000 damages for

11

fraud; (5) $12,000 in payroll taxes; (6) $11,880 in disability benefits not received; (7) $250,000 in emotional distress; (8) $11,283.33 in statutory penalties; and (9) $1,351,560 in punitive damages. In sum, economic damages and penalties totaled $437,063.33, while emotional distress damages totaled $250,000. By this measure, emotional distress claims are neither incidental to nor at the heart of plaintiff's action; they are a significant, if not equal, part of plaintiff's case alongside economic damages. We conclude plaintiff's use of the statement of damages was reasonable and appropriate in these circumstances, though this is not to say it would have been wrong to include specific damage numbers in the complaint.

*Judgment is Not Void Based on Improper Terminating Sanctions Order*

Defendants also claim the judgment is void because (1) the court lacked jurisdiction to impose terminating sanctions rather than lesser sanctions; and (2) the court lacked jurisdiction to impose terminating sanctions without adequate process. But it is clear neither the order striking defendants' answer nor the default judgment itself was void. "'A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable.' [Citation.] A judgment is void if the court lacked jurisdiction over the subject matter or parties, for example, if the defendant was not validly served with summons. [Citation.] In contrast, a judgment is valid but voidable if it is the result of the court's failure to follow proper procedure." (*Johnson v. E-Z Ins. Brokerage, Inc.* (2009) 175 Cal.App.4th 86, 98.) "A mere erroneous decision on a question of law, even though the error appears on the face of the record, does not make the judgment void, if the court had jurisdiction of the subject matter and of the person of the defendant." (*Wells Fargo & Co. v. City Etc. of S.F.* (1944) 25 Cal.2d 37, 40.)

Here, the court had personal jurisdiction over defendants (they had answered the complaint and were in the courtroom at trial) and subject matter jurisdiction over the lawsuit and the question of what to do about defendants' failure to comply with the notices. "By awarding terminating sanctions on an ex parte basis, the trial court at most failed to follow proper procedure." (*Johnson v. E-Z Ins. Brokerage, Inc.*, *supra*, 175 Cal.App.4th at p. 98; see also *Lee v. An* (2008) 168 Cal.App.4th 558, 563-566 [default voidable, not void, following imposition of terminating sanctions without adequate prior notice based on failure to appear at case management conference].) And by utilizing terminating sanctions rather than a lesser sanction under the specific circumstances of this case, the court perhaps erred in its decision, but it did not lack jurisdiction to impose sanctions. The correct question on this point is whether the court's order granting terminating sanctions and the ensuing default judgment are voidable, not whether they are void. We cannot directly answer this question, as defendants did not appeal the judgment. But we indirectly entertain this question below within the framework of section 473, subdivision (b).

*Court Erred by Denying Discretionary Relief Pursuant to Section 473, Subdivision (b)*

"The court may, upon any terms as may be just, relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief . . . shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." (§ 473, subd. (b).) Defendants filed their motion less than three months after judgment was entered.

"[B]ecause the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default." (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233, superseded by statute on

13

another basis as described in *Tackett v. City of Huntington Beach* (1994) 22 Cal.App.4th 60, 64–65.)  We review the trial court's ruling for an abuse of discretion.  (*Ibid*.)

Defendants' notice of motion framed their request for relief as being based on their prior counsel's (i.e., Baker's) neglect, surprise, and mistake.  Read fairly and in conjunction with the rest of defendants' moving papers, it is more accurate to say defendants' neglect, surprise, and/or mistake, which was based in part on Baker's alleged advice and lack of adequate warnings, provided the basis for defendants' motion.

Phan's declaration stated the following:  (1) he does not speak English well; (2) Baker told Phan that plaintiff wanted certain documents, but did not say there would be penalties for not bringing the documents; (3) Phan could not find the documents, and Baker said all Phan would have to do was explain his inability to do so in court; (4) Phan was very surprised by the court's ruling that he had violated orders because he had not seen any orders; and (5) Phan never intended to violate any court orders.  New counsel for Phan (Lazo) also submitted a declaration, but (to the extent it added anything to the question of whether neglect, surprise, or mistake occurred ) it was composed of hearsay based on conversations with prior counsel Baker.

"'Excusable neglect' is generally defined as an error ""'a reasonably prudent *person* under the same or similar circumstances might have made.'"""  (*Ambrose v. Michelin North America, Inc.* (2005) 134 Cal.App.4th 1350, 1354.)  "'It is well settled that relief may be granted for mistake of law by a party's attorney.  [Citation.]  An honest mistake of law is a valid ground for relief where a problem is complex and debatable.  [Citation.]  The issue of which mistake of law constitutes excusable neglect presents a question of fact.  The determining factors are the reasonableness of the misconception and the justifiability of lack of determination of the correct law.'"  (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1111.)  "The term 'surprise,' as used in section 473, refers to '"some condition or situation in which a party . . . is unexpectedly placed to his injury, without any default or negligence of his

14

own, which ordinary prudence could not have guarded against.""" (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 611.)

We conclude defendants established they were suffering under a reasonable misconception of the law when they failed to exhaust their resources and expend sufficient effort to produce documents at trial. In one sense, it was easy for defendants to avoid this result — they simply could have complied with the subpoena. It was entirely predictable that the court would impose some sanction for a failure to comply with a trial subpoena. But the immediate sanction of a default judgment was not a reasonably expected outcome. The court therefore abused its discretion by denying defendants' motion for relief from the default and default judgment. It is necessary to examine the question of terminating sanctions from several different perspectives to hone in on precisely why it was reasonable for defendants to assume their failure to produce documents at trial would not result in a default judgment.

A. *Terminating Sanctions in Discovery Context*

Specific provisions of the Civil Discovery Act authorize courts to utilize terminating sanctions to remedy the harm done by a party's discovery abuses. The basic framework for discovery sanctions is set forth in section 2023.030. "[T]he court . . . may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process: [¶] (a) . . . a monetary sanction . . . . [¶] (b) . . . an issue sanction . . . . [¶] (c) . . . an evidence sanction . . . . [¶] (d) . . . *a terminating sanction* by one of the following orders: [¶] (1) An order striking out the pleadings or parts of the pleadings of any party engaging in the misuse of the discovery process. [¶] (2) An order staying further proceedings by that party until an order for discovery is obeyed. [¶] (3) An order dismissing the action, or any part of the action, of that party. [¶] (4) An order rendering a judgment by default against that party. [¶] (e) . . . a contempt sanction . . . ." (§ 2023.030, italics added.)

15

Other Civil Discovery Act statutes make clear that, in the context of a recalcitrant litigant who has failed to respond to discovery requests, terminating sanctions may be imposed only after a court order compelling further action. (See, e.g., §§ 2025.450, subd. (h) ["If that party . . . then fails to obey an order compelling attendance, testimony, and production, the court may make those orders that are just, including the imposition of . . . a terminating sanction"]; 2030.300, subd. (e) ["If a party then fails to obey an order compelling further response to interrogatories, the court may make those orders that are just, including the imposition of . . . a terminating sanction"]; 2031.320, subd. (c) ["if a party then fails to obey an order compelling inspection, copying, testing, or sampling, the court may make those orders that are just, including the imposition of . . . a terminating sanction"].) Terminating sanctions are not supposed to be used as punishment for discovery misconduct. Instead, they are available as a last resort when lesser sanctions will not compel compliance with the discovery rules. (*Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1516.)

Moreover, discovery sanctions may be imposed only "*after notice* to any affected party, person, or attorney, *and after opportunity for hearing.*" (§ 2023.030, italics added.) "Discovery sanctions may not be ordered ex parte, and an order purporting to do so is" improper. (*Sole Energy Co. v. Hodges* (2005) 128 Cal.App.4th 199, 208 [reversing default judgment as a result of lack of statutory and constitutional due process in imposing terminating sanctions for discovery abuses]; cf. *Alliance Bank v. Murray* (1984) 161 Cal.App.3d 1, 8-9 [terminating sanction upheld notwithstanding insufficient statutory notice of motion — only two days written notice — because affected party waived defective notice by appearing at hearing and opposing motion on the merits].)

In sum, in the discovery context, a mere failure to produce documents at the time appointed in a notice would not result in a summary default proceeding — it would, after a noticed motion to compel, result in a court order to comply with discovery

16

obligations which, if violated, would then set the stage for potential terminating sanctions. Moreover, if the documents were pertinent to only limited areas of the case (e.g., punitive damages and alter ego), courts would have the obligation to consider utilizing an issue sanction or evidence sanction rather than striking the answer and entering a default judgment on the entire case. (See, e.g., *Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1217 ["Discovery sanctions must be tailored in order to remedy the offending party's discovery abuse, should not give the aggrieved party more than what it is entitled to, and should not be used to punish the offending party"].)

### B. Terminating Sanctions Improper for Failure to Appear at Trial

It is improper for a court to enter the default of a defendant because the defendant fails to appear for trial. (*Heidary v. Yadollahi*, *supra*, 99 Cal.App.4th at p. 862.) A default judgment entered under these circumstances is void. (*Id*. at pp. 862-863.) This rule applies regardless of whether the defendant receives proper notice of the trial. (*Ibid*.) "'Where the defendant who has answered fails to appear for trial "the plaintiff's sole remedy is to move the court to proceed with the trial and introduce whatever testimony there may be to sustain the plaintiff's cause of action."'" (*Id*. at p. 863.) Of course, in the instant case, defendants were served with a notice to appear at trial to testify with documents; they were not merely notified of the trial date.

### C. Terminating Sanctions Improper for Invocation of Right Against Self-Incrimination

"Although lesser civil sanctions may be imposed upon a defendant who asserts the Fifth Amendment privilege [against self-incrimination], the overwhelming majority of courts hold that the striking of the defendant's answer and the resultant default procedure are too harsh a sanction for exercising such an important constitutional right." (*Alvarez v. Sanchez* (1984) 158 Cal.App.3d 709, 713, fn. omitted.) In *Alvarez v. Sanchez*, defendants cooperated with discovery proceedings but asserted their Fifth

17

Amendment privilege at trial following the filing of criminal charges against them in connection with certain transactions that were the subject of the civil litigation. (*Id*. at p. 714.) It was reversible error to strike the defendants' answer and enter their default. (*Ibid*.) "The striking of the answer and resultant proceeding by default gave [plaintiffs] a totally unjustified advantage in proving their claim, for it prevented their proof from being tested by cross-examination, and by contrary evidence, both testimonial and documentary. Such conduct by the trial court effectively denied [defendants] their fundamental right to a trial simply because they invoked their constitutional right. Such ruling was unnecessary." (*Id*. at pp.714-715.)

*D. Award of Punitive Damages Without Proof of Financial Condition*

Generally, punitive damages are inappropriate unless sufficient proof of a defendant's financial condition is presented. But if a court orders the production of evidence of a defendant's financial condition following the liability phase of the trial, and the defendant fails to comply with such an order, the defendant loses the right to complain about the issue on appeal and an award of punitive damages is appropriate. (*Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 609-610.) The same rule applies when a defendant has been served with a subpoena to produce evidence of his financial condition at trial and the defendant fails to produce the records. (*Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1322, 1336-1338.) "In light of [defendant's] failure to comply with the subpoena for records, we conclude that he is estopped from challenging the punitive damage awards based on lack of evidence of his financial condition or insufficiency of the evidence to establish his ability to pay the amount awarded." (*Id*. at p. 1338; cf. *In re Marriage of Hofer* (2012) 208 Cal.App.4th 454, 456-461 [in family law case, husband failed to comply with court orders to produce documents evidencing his financial condition, resulting in appellate court dismissal of his appeal pertaining to attorney fees award to ex-wife].) No case has suggested, however, that a failure to

18

comply with an order or subpoena pertaining to proof of financial condition can result in terminating sanctions for the entire case.

*E.  The Court's Order Could Not Have Been Predicted*

Here, defendants failed to bring documents to trial pursuant to a notice to appear with documents, thereby depriving plaintiff of evidence she deemed necessary to prove parts of her case (i.e., alter ego and punitive damages).  The court immediately granted an oral motion to strike defendants' answer and enter a default judgment.

"The process by which the attendance of a witness is required is the subpoena.  *It is a writ or order* directed to a person and *requiring the person's attendance* at a particular time and place to testify as a witness.  It may also *require a witness to bring any books, documents, electronically stored information, or other things* under the witness's control which the witness is bound by law to produce in evidence."  (§ 1985, subd. (a), italics added.)

"In the case of the production of a party to the record of any civil action or proceeding . . . the service of a subpoena upon any such witness is not required if written notice requesting the witness to attend before a court, or at a trial of an issue therein, with the time and place thereof, is served upon the attorney of that party of person. . . . *The giving of the notice shall have the same effect as service of a subpoena on the witness*, and the parties shall have those rights and the court may make those orders, *including the imposition of sanctions*, as in the case of a subpoena for attendance before the court." (§ 1987, subd. (b), italics added.)  The notice "may include a request that the party or person bring with him or her books, documents, electronically stored information, or other things.  The notice shall state the exact materials or things desired and that the party or person has them in his or her possession or under his or her control." (§ 1987, subd. (c).)

19

Thus, the court correctly stated that a notice to a party under section 1987 is of the same effect as a subpoena. (§ 1987, subd. (b).) Moreover, the court also correctly stated that a subpoena is, in essence, a court order. (§ 1985, subd. (a).) These matters are clear and not the subject of a reasonable mistake. (See *Corenbaum v. Lampkin*, *supra*, 215 Cal.App.4th at p. 1338 ["for purposes of requiring attendance and the production of documents at trial, a subpoena is equivalent to a court order"].)

The murkier issue is whether terminating sanctions are available as a remedy for a party's failure to bring documents to trial pursuant to a subpoena. There was no order beyond the notice itself to compel defendants to immediately bring the documents to court, perhaps in combination with a lesser sanction. There was no attempt to tailor an issue or evidence sanction based on the nature of the documents withheld (e.g., the court would find in plaintiff's favor on the equitable issue of alter ego liability and punitive damages would be made available if liability were proven notwithstanding the lack of evidence of financial condition). There was no advance warning that the failure to produce the documents would result in terminating sanctions. There was no notice and opportunity to prepare for a hearing on the issue. Rather, the court peremptorily ended the case upon deciding defendants had failed to comply with the notices.

There is no explicit statutory authority for the court's order. The primary statutory remedy for violation of a trial subpoena is a finding of contempt. (§§ 1991 ["Disobedience to a subpoena . . . may be punished as a contempt by the court issuing the subpoena"]; 1209, subd. (a)(10) ["[d]isobedience of a subpoena duly served" is contempt].) Courts may also impose a monetary penalty: "A person failing to appear pursuant to a subpoena or a court order also forfeits to the party aggrieved the sum of five hundred dollars ($500), and all damages that he or she may sustain by the failure of the person to appear pursuant to the subpoena or court order, which forfeiture and damages

20

may be recovered in a civil action." (§ 1992.) In sum, statutory provisions specifically pertaining to violations of subpoenas do not mention terminating sanctions.

The ability to impose other sanctions for trial misconduct by a party, including terminating sanctions, is likely found in the court's inherent powers "[t]o provide for the orderly conduct of proceedings before it" (§ 128, subd. (a)(3)) and "[t]o compel obedience to its . . . orders" (§ 128, subd. (a)(4)). (See also § 187 ["When jurisdiction is . . . conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code"]; Gov. Code, § 68608, subd. (b) ["Judges shall have all the powers to impose sanctions authorized by law, including the power to dismiss actions or strike pleadings," in connection with implementation of the Trial Court Delay Reduction Act].)[4] For instance, a terminating sanction may be appropriate if a litigant flagrantly violates its obligation to attend a mandatory settlement conference, so long as previous monetary sanctions have not worked and the party is put on notice of the possibility of a terminating sanction. (See *Sigala v. Anaheim City School Dist.* (1993) 15 Cal.App.4th 661, 672-674.)

We do not doubt that some hypothetical fact patterns involving the violation of a trial subpoena would support the imposition of terminating sanctions as the only reasonable means to conclude a trial in an orderly fashion. (See *Del Junco v.*

---

[4] It has repeatedly been held that, outside of contempt proceedings, trial courts' inherent powers do not include the ability to impose monetary sanctions unmoored to specific statutory authorization. (See, e.g., *Vidrio v. Hernandez* (2009) 172 Cal.App.4th 1443, 1454-1455.) But the imposition of issue, evidence, and terminating sanctions are more directly linked to the determination of the issues in dispute. To deny a court the ability to provide for a fair resolution of a trial when faced with an intransigent litigant would be illogical.

*Hufnagel* (2007) 150 Cal.App.4th 789, 799 [courts should exercise "inherent authority to dismiss an action" only in "extreme situations"].)  It is also apparent that if the court had imposed issue or evidence sanctions as to the alter ego and punitive damages allegations, defendants' mistake could be chalked up to incompetence and unreasonable mistakes of law.

But there was little reason for defendants to suspect the court's inherent powers included the ability to impose terminating sanctions peremptorily, within minutes after an oral motion by plaintiff and out of proportion to the actual harm caused by defendants' violation of a subpoena.  Due process requires notice of the possibility of a sanction and a fair opportunity to be heard in opposition to its imposition.  Principles of fairness likewise require courts to tailor sanctions to remedy the violation committed. (See, e.g., Gov. Code, § 68608, subd. (b) [terminating sanctions are available "if it appears that less severe sanctions would not be effective"].)  These principles, reflected in the Civil Discovery Act and elsewhere, must also apply in the context of a defendant's response to a trial subpoena.  Extra leeway necessarily exists during trial, as it would be impractical to require a lengthy notice period and a written motion once trial has begun (indeed, in this case, a jury had been empanelled and the testimony had already begun). But the abbreviated process followed here, as well as the all-encompassing nature of the sanction, was unusual and not easily foreseen.

Assuming the court's order striking defendants' answer and entering a default judgment was within the court's discretion, it was reasonable for defendants to make the mistake of assuming he was not subject to this ultimate sanction without advance notice and without regard to the scope of the documents withheld.  The court abused its discretion by refusing to grant relief from the default and default judgment as a result of defendants' neglect, surprise, and mistake.[5]

---

[5] Clearly, an appeal of the judgment would have been a preferable means for defendants to challenge the merits of the court's terminating sanctions order and ensuing

22

The postjudgment order denying the motion to vacate the default judgment is reversed. The case is remanded with directions to grant the motion "upon any terms as may be just" (§ 473, subd. (b)). In the interests of justice, the parties shall bear their own costs incurred on appeal, as several of the issues raised by defendants on appeal were without merit.


IKOLA, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.

---

default judgment. Defendants' motion for relief under section 473, subdivision (b), is an awkward fit because it appears that the court committed error; there is some truth to the court's observation that this motion was a disguised motion for reconsideration. Nonetheless, under the unique circumstances of this case, relief under section 473, subdivision (b), was still merited and the court abused its discretion by not providing this relief. (See *Ron Burns Construction Co., Inc. v. Moore* (2010) 184 Cal.App.4th 1406, 1416-1420 [trial court erred by denying discretionary relief under § 473, subd. (b), based on finding that moving party was attempting to make an end-run around § 1008].)