[Civ. No. 49731. Second Dist., Div. Two. Jan. 27, 1977.]

WHITTIER UNION HIGH SCHOOL DISTRICT, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
JOHN C. CARROLL et al., Real Parties in Interest.

**COUNSEL**

John H. Larsen, County Counsel, Ronald J. Selgrath, Deputy County Counsel, McKay & Byrne and Michael A. Byrne for Petitioner.

No appearance by Respondent.

Michael J. Piuze for Real Parties in Interest.

**OPINION**

**FLEMING, J.**—Petition by Whittier Union High School District for writ of mandate to vacate a superior court order setting aside a voluntary dismissal of a complaint for personal injuries.

In July 1973 John C. Carroll, his mother, and father, all represented by Attorney Pierovich, filed an action for damages for personal injuries to John against Whittier Union High School District (District) and others as defendants. The complaint alleged that in October 1972 in the course of a high school football practice tackling drill, the son sustained serious and crippling injuries to his spinal cord as a result of District's negligence. In September 1974, without the knowledge or consent of his clients, Pierovich purported to settle the action against District, its officers, and agents for $30,000. His clients remained ignorant of the settlement and received none of the proceeds. Settlement was effected by means of forged signatures of the three Carrolls on a release and indemnity agreement and by forged endorsements of the Carrolls on a draft for $30,000 delivered by the insurer of District to Pierovich. In November 1974 Pierovich dismissed the action with prejudice. Pierovich has since been disbarred, and is presently incarcerated at the California Institution for Men at Chino.

In March 1976, the Carrolls, learning that Pierovich had been convicted of fraud and forgery in a similar case, employed a new attorney, who in July 1976 moved to vacate the judgment of dismissal filed in November 1974. The superior court granted the motion and ordered the complaint reinstated.

1. District contends that in setting aside the dismissal the superior court acted in excess of its jurisdiction because the provisions of Code of Civil Procedure section 473 allowing relief from entry of judgment are limited to applications made within six months of the date of judgment. The Carrolls reply that the time limitations of section 473 do not apply when the judgment has been procured by fraud. They cite the well-known case of *United States* v. *Throckmorton* (1878) 98 U.S. 61, 65-66 [25 L.Ed. 93, 95], in which the court said: ". . . 'Where the unsuccessful party has been prevented from exhibiting fully his case, *by fraud or deception practiced on him by his opponents,* as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where an attorney regularly employed corruptly sells out his client's interest to the other side,—these and similar cases which show that there has never been a real contest in the trial or hearing of the case;' such are, in the view of the tribunal, instances of extrinsic fraud." (Italics added.)

■ District counters the foregoing argument with the assertion that neither it nor its attorneys practiced any fraud or deception on the Carrolls' own attorney, for whose conduct the Carrolls must assume responsibility. In surrebuttal the Carrolls shift their ground, and put their reliance on the general power of a court to grant equitable relief against judgment procured by "extrinsic mistake."

The doctrine of "extrinsic mistake" has been used to grant relief to a client who has relied to his detriment on a dishonest or incompetent lawyer to handle his legal business. The "mistake" involved is a species of legal fiction used to justify court action, in that the real mistake involved is either that of the client in employing unsatisfactory counsel or that of the attorney in failing to meet his professional obligations. On this phase of the case the argument boils down to a claim that the Carrolls should be granted relief 20 months after entry of judgment against them because of the dishonesty of their own attorney whom they had selected to represent them. Nothing in the record attributes or identifies this dishonesty with any conduct of District or suggests that District is other than an innocent party who dealt in good faith with the Carrolls' attorney as their duly designated agent. In recent years courts of equity have struggled with the problem of incompetency or dishonesty or a party's own counsel and have attempted to reconcile relief based on these grounds with the principle of finality of judgment. These attempts have not been uniformly successful, nor have they produced any consistent and uniform body of doctrine that can be disinterestedly and impartially applied. (See opinions in *Hallett* v. *Slaughter* (1943) 22 Cal.2d 552, 557 [140 P.2d 3]; *Orange Empire Nat. Bank* v. *Kirk* (1968) 259 Cal.App.2d 347, 353 [66 Cal.Rptr. 240]; and see comment in 5 Witkin, Cal. Procedure (2d ed.) pp. 3744, 3758, 3760-3770.) The tenor of professional comment suggests that the doctrine of extrinsic mistake, when used to provide remedial relief for misconduct or neglect of a party's own counsel, produces law that is forced and contrived and creates the hard cases that make bad law. We do not believe equitable relief based on either extrinsic fraud or extrinsic mistake is appropriate in the cause at bench.

2. ■ Nevertheless plaintiffs were properly relieved from the judgment in spite of the absence of any true extrinsic fraud or extrinsic mistake in the cause. Quite simply, the controlling question is whether Pierovich had any authority to dismiss plaintiffs' action without their knowledge and consent. If he wholly lacked power to dismiss the cause

and acted beyond the scope of his authority in dismissing his clients' complaint, his action remained voidable for an indeterminate period, and his clients could vacate the unauthorized dismissal within a reasonable time after learning of it, regardless of the time limitations in section 473 and regardless of rules governing relief in instances of extrinsic fraud or extrinsic mistake. Because the facts are undisputed that Pierovich's dismissal was wholly unauthorized and entered without any knowledge and consent of plaintiffs, the dismissal may be vacated by the court at any time.

Strong support for this view appears in *Navrides* v. *Zurich Ins. Co.* (1971) 5 Cal.3d 698 [97 Cal.Rptr. 309, 488 P.2d 637, 49 A.L.R.3d 828]. That cause likewise involved settlement of an action by means of an attorney's forgery, but it differs from the one at bench in that plaintiffs there ratified the unauthorized settlement of their counsel and sought to collect upon it. Significant for our purposes is a footnote to the court's opinion, in which the court in dictum considered the possibility of setting aside an unauthorized dismissal and strongly implied the propriety of so doing. Said the court: "Apparently plaintiff made no attempt to set aside the unauthorized dismissal of her personal injury action. We need not speculate as to the probable success of any such proceedings had they been undertaken. Nevertheless we observe that the law is well settled that an attorney must be specifically authorized to settle and compromise a claim, that merely on the basis of his employment he has no implied or ostensible authority to bind his client to a compromise settlement of pending litigation (*Linsk* v. *Linsk* (1969) 70 Cal.2d 272, 277-278 [74 Cal.Rptr. 544, 449 P.2d 760]; *Bice* v. *Stevens* (1958) 160 Cal.App.2d 222, 231 [325 P.2d 244]) and that clearly he has no authority pursuant to an unauthorized settlement to enter a dismissal with prejudice (*Robinson* v. *Hiles* (1953) 119 Cal.App.2d 666, 672 [260 P.2d 194])." (P. 702.) In *Bice* v. *Stevens, supra,* the court put the matter as follows: "The rule is almost universal that an attorney who is clothed with no other authority than that arising from his employment in that capacity has no implied power by virtue of his general retainer to compromise and settle his client's claim or cause of action. [Citation.] An attorney does not, without specific authorization, possess the power or authority to bind his client to a compromise settlement of pending litigation. [Citation.] Without his client's free and intelligent consent, after full knowledge of all the facts and circumstances, an attorney may not surrender any substantial right of his client; nor may he impair, compromise, or destroy his client's cause of action. [Citation.]" (Pp. 231-232.)

In *Robinson* v. *Hiles, supra,* the court stated the principle thus: "In California it is settled law that mere employment of an attorney to represent a client in litigation does not carry with it the power to compromise that litigation." (P. 672.) (See also the general rule of an attorney's authority set out in 7 Am.Jur.2d at p. 127, where it is said there is no dissent from the proposition that an attorney has no implied power to settle his client's cause of action.)

It follows that dismissal of a cause of action by an attorney acting without any authority from his client is an act beyond the scope of his authority which, on proper proof, may be vacated at any time. Obviously, such action requires strong and convincing proof, and the longer the delay in the application for relief the stronger and more convincing the factual proof should be. When nothing more than client misunderstanding or client change of heart is involved, the propriety of such relief is doubtful. (Cf. *Robinson* v. *Hiles* (1953) 119 Cal.App.2d 666, 672-673 [260 P.2d 194].) Yet while proof of lack of authority may often be difficult, when, as at bench, proof is solid and strong, a court can, should, and will act. We conclude that the principle suggested in *Zurich*—that an attorney has no implied or ostensible authority to dismiss litigation in the absence of specific authority of his client—authorizes and controls the vacation of judgment ordered by the trial court.

3. What has been said in the previous sections disposes of the ruling directly before us. However, some discussion about who bears the loss of $30,000 is appropriate.

Initially, we believe that District and its insurer, as innocent parties defrauded of $30,000 by plaintiffs' attorney, are at a minimum entitled to an offset in this amount against any judgment that may result in this cause in favor of the Carrolls. In addition, however, District and its insurer may be entitled to seek reimbursement of their $30,000 loss in a separate action against plaintiffs, negotiating banks, and others who may be liable to make good the loss. District and its insurer may have a valid claim against the Carrolls to recover their lost $30,000, under the theory that a principal is liable for the fraud of his agent acting under actual authority or acting under ostensible authority. An attorney at law is authorized to accept money from a defendant (Code Civ. Proc., § 283) and is also authorized to physically receive papers and checks from a defendant against whom a money demand has been made. Under such circumstances the client as principal may become liable for the fraud of

his attorney as agent. (See *Weiner* v. *Luscombe,* 19 Cal.App.2d 668 [66 P.2d 151], which held that money paid to a faithless attorney is money paid to the principal, and see cases cited in *Navrides* v. *Zurich Ins. Co.* (1971) 5 Cal.3d 698, at pp. 708-711 [97 Cal.Rptr. 309, 488 P.2d 637, 49 A.L.R.3d 828].) Because the relationship of attorney and client is one of agent and principal the general rule of liability of the principal for acts of his agent, as set out in Restatement Second, Agency, sections 261, 262, may apply:

"§ 261. Agent's Position Enables Him to Deceive

"A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud."

"§ 262. Agent Acts for His Own Purposes

"A person who otherwise would be liable to another for the misrepresentations of one apparently acting for him is not relieved from liability by the fact that the servant or other agent acts entirely for his own purposes, unless the other has notice of this."

Under these general rules of liability it is possible the Carrolls may be liable for moneys received by their agent purportedly acting under their authority and ostensibly acting on their behalf.

Finally, we point out that recourse may be available to the Carrolls, and, derivatively, to District and its insurer, under the Clients' Security Fund established by the State Bar pursuant to Business and Professions Code section 6140.5. This section provides: "(a) The board may establish and administer a Client Security Fund to relieve or mitigate pecuniary losses caused by the dishonest conduct of those active members of the State Bar. Any payments from the fund shall be discretionary and shall be subject to such regulation and conditions as the board shall prescribe. The board may delegate the administration of the fund to the disciplinary board provided for in Section 6086.5, or to any board or committee created by the board of governors."

The fraud and embezzlement that occurred here may be a reimbursable loss caused by the dishonest conduct of an active member of the State Bar acting as fiduciary on behalf of his clients.

The writ is denied and the order to show cause is dismissed.

Compton, J., concurred.

Roth, P. J., concurred in the judgment.

A petition for a rehearing was denied February 17, 1977, and petitioner's application for a hearing by the Supreme Court was denied March 31, 1977. Bird, C. J., Clark, J., and Manuel, J., were of the opinion that the application should be granted.