Filed 2/28/24

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| W. BRADLEY ELECTRIC, INC., et al.,<br><br>    Cross-defendants and Respondents,<br><br>v.<br><br>MITCHELL ENGINEERING,<br><br>    Cross-complainant and Appellant. | A167137<br><br>(City & County of San Francisco Super. Ct. Nos. CGC19575663, CGC20583018) |

Defendant and cross-complainant (and appellant) Mitchell Engineering (Mitchell) appeals from an order denying its motion under Code of Civil Procedure section 473[1] to set aside a judgment dismissing its cross-complaint against cross-defendants (and respondents) W. Bradley Electric, Inc. (Bradley) and DeHaro Ramirez Group (DeHaro).  Mitchell contends the dismissal should have been vacated under section 473, subdivision (d), because its attorney entered into a settlement agreement and dismissed the cross-complaint without Mitchell's express authorization.  Mitchell also contends in its reply brief that the court should have granted relief under section 473, subdivision (b), on the grounds of surprise or excusable neglect.

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II A.

[1] All statutory references are to the Code of Civil Procedure.

We will affirm the order. In the published portion of this opinion, we conclude that, even if the dismissal could be deemed void rather than voidable for purposes of section 473, subdivision (d), substantial evidence supports the conclusion that Mitchell ratified the unauthorized actions of its attorney, and Mitchell fails to establish that the trial court abused its discretion in denying the motion to set the dismissal aside. In the unpublished portion of the opinion, we conclude that Mitchell's argument under section 473, subdivision (b), is forfeited and meritless.

## I. <u>FACTS AND PROCEDURAL HISTORY</u>

In May 2019, plaintiffs Mary Wong (individually and as the personal representative of the Estate of Lai Lee Wong), Thomas Wong, Felix Wong, and Jerry Wong (collectively, Plaintiffs) sued Mebrhatu Behre Brhane and Doe defendants (Case No. CGC-19-575663). Plaintiffs alleged that, on March 16, 2018, Lai Lee Wong was crossing the street near Broadway and Stockton Streets in San Francisco, when a vehicle driven by Brhane, while working as a rideshare driver for Uber Technologies Inc. (Uber), struck her in the crosswalk and caused injuries that led to her death. Uber was later substituted for Doe 1 and added as a defendant.

In February 2020, Plaintiffs filed a separate complaint against Mitchell (Case No. CGC-20-583018). Plaintiffs alleged that the condition of the sidewalk and crosswalk entrance near the intersection of the accident, which was under construction as part of a project involving Mitchell, was a contributing cause of the fatal accident. According to the complaint, Mitchell "negligently controlled, designed, constructed, maintained, operated, and inspected the accident intersection so as to create a dangerous condition . . . that created a substantial risk of injury to the members of the general public."

2

Mitchell initially tendered its defense and indemnification to its insurer, The Hartford. After The Hartford appointed John Hauser as Mitchell's lawyer, Mitchell answered the complaint and filed a cross-complaint against Brhane.

Mitchell later tendered the matter to Bradley's insurer, The Travelers Indemnity Company of Connecticut (Travelers), as an additional insured under Bradley's policy. Travelers agreed to defend Mitchell subject to a reservation of rights and retained the law firm of Thomas | Lucas to represent Mitchell.

After the Thomas | Lucas firm joined Mitchell's defense, Mitchell filed an amended cross-complaint against Brhane for indemnity, partial indemnification, and declaratory relief in August 2020. That same month, the trial court consolidated Plaintiffs' two cases under Case No. CGC19575663.

In May 2021, Mitchell filed a second amended cross-complaint against Brhane, Uber, DeHaro, and Bradley (hereafter, cross-complaint). The cross-complaint asserted causes of action for equitable indemnity and contribution against all cross-defendants, express indemnity against DeHaro and Bradley based on indemnity provisions in their subcontracts, breach of contract against DeHaro, and declaratory relief.

DeHaro then filed a cross-complaint against Mitchell, Bradley, Brhane, and Uber, seeking equitable indemnity, equitable contribution, and declaratory relief.

In November 2021, Bradley moved for summary judgment against Mitchell, setting the hearing for January 19, 2022.

A.  Settlements

Plaintiffs entered into a settlement agreement with Brhane and Uber. The trial court granted their motion for a determination that the settlement was in good faith in December 2021.

Around the same time, Plaintiffs agreed to settle with DeHaro and Bradley for $10,000 each, provided that the remaining parties—including Mitchell—stipulated that the settlement was in good faith or the trial court issued a good faith settlement determination.

Lawyers for Mitchell and DeHaro began to negotiate a potential resolution of the Mitchell and DeHaro cross-actions.  Mitchell was represented by Vanessa Whirl of Thomas | Lucas.  The lawyers reached a proposed stipulation by which (1) Mitchell would concede the good faith of DeHaro's settlement with Plaintiffs and (2) Mitchell and DeHaro would dismiss their cross-complaints against each other in exchange for a waiver of fees and costs.

In a December 14, 2021 email to Mitchell's president (Curtis Mitchell) and other Mitchell personnel (Kathy Streblow and Andy Noll), Whirl apprised Mitchell that DeHaro and Bradley had settled with Plaintiffs, the trial court had approved Uber's and Brhane's settlement with Plaintiffs, and Mitchell still had express indemnity claims against Bradley and DeHaro. Whirl then explained the strategic benefit of the proposed settlement with DeHaro (and Bradley): "Now the question being posed is:  *do we dismiss against Bradley and DeHaro, leaving just us against Plaintiffs?  My recommendation is yes, and here is why.* [¶]  1.  I have always said it does not make sense for us three defendants to be throwing mud at each other.  It only strengthens Plaintiffs' case for them.  [¶]  2.  Bradley has an MSJ pending before the Court.  If we oppose it and lose, we could be on the hook for

4

attorney fees to Bradley.  Not good.  [¶]  3.  Bradley and DeHaro's settlements of $10,000 a piece set an anchor.  Mitchell is no more culpable than they are.  So *I want to get authority for a $10k offer to them*.  If they don't take it, we move forward with the MSJ I've been telling you about and see how it goes."  (Italics added.)  Whirl's email concluded:  "Travelers is already on board with my recommendation but *I wanted to discuss with you guys before I bless the settlements and dismiss our Cross-Complaints*.  Please let me know as soon as you can what your position is.  I am available for a call if needed, although my phone rings all day and I may be unavailable when you call."  (Italics added.)

The next day (December 15, 2021), without receiving any response from Mitchell, Whirl sent an email to Bradley's attorney, stating that "[t]his will confirm our conversation wherein I agreed that my client will stipulate to your client's settlement with Plaintiff in the amount of $10,000.  We will further dismiss our express indemnity cause of action against your client **in exchange for a waiver of fees and costs**."  (Bolding in original.)  Whirl sent essentially the same email to DeHaro's attorney, confirming that Mitchell would dismiss its indemnity cause of action against DeHaro for a waiver of fees and costs.

On December 21, 2021, Whirl sent a status report to the claims adjuster for Travelers, with a copy to Streblow, a Mitchell employee.  On page 12 of the 15-page report, Whirl advised that Bradley had moved for summary judgment on Mitchell's cross-complaint.  She also reported that Bradley and DeHaro had settled with Plaintiffs for $10,000 each and recounted the following:  "We were requested by their respective attorneys to stipulate to the good faith nature of the settlements and drop our claims of express indemnity.  After discussion with you [Travelers], we determined it was best

to concede to the settlements and drop the express [indemnity] claims . . . . [¶] Because we are stipulating to these settlements, we obtained a waiver of fees and costs from each of them and stopped work on the Opposition to the W. Bradley MSJ."

On January 4, 2022, on Mitchell's behalf but *without* Mitchell's express authorization, Whirl signed a Stipulation Regarding Good Faith of Settlement Between Plaintiffs and DeHaro-Ramirez Corporation (Stipulation). The Stipulation states in relevant part: "The undersigned parties hereby stipulate and agree that the settlement between DeHaro and Plaintiffs is in good faith pursuant to the provisions of [] section 877.6, as well as the factors set forth in *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.* (1985) 38 Cal.3d 488. . . . Rather than incur the burden, expense, and delay in seeking a judicial determination of good faith settlement pursuant to [] sections 877(b) and 877.6, **and with the agreement to dismiss all cross-complaints pending between the parties hereto <u>with prejudice</u>, in return for an agreement for each party to bear its own attorney's fees and costs of suit herein,** the undersigned parties agree, and stipulate, that the settlement between Plaintiffs and DeHaro would properly be determined to be in good faith under these code sections as well as pursuant to the factors set forth in *TechBilt, Inc. v. Woodward-Clyde & Assocs.* (1985) 38 Cal.3d 488, if an application or motion were to be filed with the Court, and thus no such filing is required given this stipulation." (Bolding in original.) The Stipulation further provided: "This Stipulation *eliminates any further indemnification or contribution claim* arising out of the Plaintiffs' claimed injuries and damages, this lawsuit, or any settlements among the undersigned defendants. Likewise, this Stipulation eliminates any claims which were or could have been presented in the pending cross-complaints of

6

DeHaro and Mitchell Engineering, and any claims which could have been presented by way of a cross-complaint of W. Bradley Electric, Inc. against DeHaro in this matter." (Italics added.) Counsel for DeHaro, Bradley, and Plaintiffs also signed the Stipulation. In short, the Stipulation precluded Mitchell from pursuing its cross-complaint, including any claims against DeHaro or Bradley.

Consistent with the Stipulation, Whirl signed, on Mitchell's behalf, a voluntary Request for Dismissal with prejudice of Mitchell's cross-complaint on January 5, 2022. The trial court entered the dismissal the same day. Thereafter, Plaintiffs dismissed their complaint as to Brhane and Uber, and DeHaro dismissed its cross-complaint as to all cross-defendants including Mitchell, leaving only Plaintiffs' claim against Mitchell.

What occurred after January 5, 2022 is largely disputed (as discussed later), but it is certain that on June 2, 2022—nearly five months after Mitchell's cross-complaint was dismissed—Curtis Mitchell emailed Whirl and an insurance claims person and asked, "Could one of you let me know if we settled Mitchell[']s cross complaint against Bradley in the Wong case?" The next day, Whirl replied: "I'm unclear what you are asking. We've discussed at length, several times, the dismissal of Bradley by Mitchell. That dismissal terminated Mitchell's claims against Bradley. There is no settlement remaining to be made because that Cross-Complaint is done." Curtis Mitchell responded that he "was aware that Bradley settled with the plaintiff" but he "never gave anyone authority to dismiss Mitchell's cross complaint against Bradley." He asked, "If the Mitchell-Bradley cross-complaint was dismissed[,] who gave authority to do that?"

Whirl replied: "It's concerning to me how many times we've discussed this and you still ask the same question. Attached is my email to your team

7

on December 14, 2021 letting you know what was going on. I had a timeline to make a call before the opposition to the GFS apps [(good faith settlement applications)] and MSJ [(motion for summary judgment)] were due. No one from your office responded to my email. I signed and filed the dismissal on January 4, 2022, three full weeks later. [¶] The insurance carriers do have the right to make calls like this when providing a defense to insureds. Insurance carriers and attorneys such as myself do this day in and day out. When we have to make tough calls, the clients don't always understand. That is why they are giving the authority to make those calls without you if necessary. Notwithstanding the same, you didn't give me any input when I ran it by you. My adjuster at Travelers gave me authority for the dismissal as she was authorized to do. [¶] Keeping Bradley in the case so you can tell the jury that Bradley screwed up when not a single professional in this investigation believes lighting to be an issue is a horrible mistake. We would not have the strength we currently have in our defense if I opposed Bradley's MSJ and built a case for Plaintiff[s] against it. Plaintiffs did not even sue Bradley; even that attorney knows he doesn't have a case for insufficient lighting. It's an argument he's throwing at the wall after the fact to see if it sticks. [¶] Let me know if you need me to forward my prior responses to this inquiry as well."

In a return email, Curtis Mitchell wrote: "Thanks Vanessa [¶] I just wanted to confirm you dismissed Bradley from the cross complaint without Mitchell's approval while being paid by Travelers. [¶] Thanks."

On June 13, 2022, Mitchell added Sellar Hazard & Lucia as its counsel. Within days, Mitchell settled with Plaintiffs.

8

B.  Mitchell's Attempt to Reinstate Its Cross-Complaint

On July 1, 2022—after it had settled with Plaintiffs and nearly six months after the dismissal of Mitchell's cross-complaint against DeHaro and Bradley—Mitchell filed a motion to set aside the dismissal of its cross-complaint pursuant to section 473, subdivision (b), arguing that the dismissal was caused by a party or legal representative's "mistake, surprise, and/or excusable neglect."  Mitchell's notice of motion also apprised that Mitchell sought relief under the trial court's equitable powers.[2]  It did not, however, mention section 473, subdivision (d).

Mitchell's motion was supported in part by a declaration from Curtis Mitchell, who averred that "the entry of the dismissal was a complete surprise and shock to [him] and hence Mitchell Engineering, and was action taken unilaterally by Thomas | Lucas by mistake or excusable neglect or some other reason disconnected from [Mitchell's] interests, or all or any combination."  He claimed he was unaware of either dismissal until June 3, 2022, when trial preparations were underway.

Bradley and DeHaro opposed Mitchell's motion, contending the requirements of section 473, subdivision (b) were not met and the motion was untimely.  Mitchell filed a reply brief, along with another declaration from Curtis Mitchell, who claimed he did not know about the settlements with DeHaro and Bradley until July 2022, after they filed their oppositions to Mitchell's motion.

A hearing on Mitchell's motion was held on August 8, 2022.  At the request of Bradley and DeHaro, the trial court continued the hearing for 60 days "to allow discovery on the points that the parties have raised and

---

[2]  Mitchell had filed an ex parte application for relief on the same grounds on June 29, 2022—which the trial court did not grant.

9

basically any point that's raised by these papers or the tentative [ruling], period, full stop." The court also allowed the parties to file supplemental briefs.

DeHaro and Bradley deposed Curtis Mitchell on September 9, 2022. He maintained that he had not understood that the cross-complaint was dismissed before June 3, 2022.

DeHaro noticed Whirl's deposition, but Whirl advised that Mitchell had instructed her not to give testimony or produce documents reflecting privileged communications. Mitchell also served an objection to the deposition, asserting it would not allow Whirl to testify as to communications with Mitchell regarding the settlement and dismissal and refusing to produce documents.

Bradley moved to compel Whirl's deposition and to order Mitchell to produce documents. Mitchell opposed the motion. The trial court granted it, finding that Mitchell waived the attorney-client privilege as to communications with Whirl about the settlement and dismissal of Mitchell's cross-complaint.

Bradley and DeHaro deposed Whirl. She testified that she repeatedly notified Mitchell, and specifically Curtis Mitchell, of the dismissal of the cross-complaint. In particular, she referenced her December 14, 2021 email to Curtis Mitchell, Streblow, and Noll, recommending the dismissal of the cross-complaint, asking their position, and inviting a call if they wanted to discuss her recommendation. Whirl did not receive a response, and "[t]he lack of response from the client, considering that they would immediately respond to me if they had input on an issue, indicated to me that there was no issue." In addition, Whirl testified she received no communication from Mitchell regarding her December 21, 2021 status report to Travelers, which

10

confirmed the stipulation to Plaintiffs' settlements with Bradley and DeHaro. According to Whirl, Curtis Mitchell never told her not to dismiss the cross-complaint, and no one from Mitchell told her she lacked authority to dismiss it. When signing Mitchell's settlement agreements with DeHaro and Bradley and dismissing the cross-complaint, she believed she had the right and authority to do so and it was in Mitchell's best interest.

Whirl also testified about discussions with Curtis Mitchell concerning the cross-complaint after it was dismissed. At least twice between March 30 and May 6, 2022, she explained the reasons for the dismissal, including in a telephone call (or two) and a video conference preparing him for a deposition in Plaintiffs' case. Immediately after Curtis Mitchell's deposition in May 2022, he and Whirl again discussed the dismissal of the cross-complaint. On May 6, 2022, Whirl sent a pre-trial report to a claims consultant at The Hartford, with a copy to Curtis Mitchell, Noll, and Streblow, confirming the agreements to dismiss Bradley and DeHaro. On May 25, 2022, Whirl and Curtis Mitchell exchanged emails regarding her discussion with an insurance broker, who confirmed that the dismissal "made perfect sense to her." Between June 3 and 7, 2022, Whirl and Curtis Mitchell had an email exchange (described above), in which Whirl asserted they had discussed the dismissal of the cross-complaint many times. Whirl testified that Curtis Mitchell claimed "surprise" only after Travelers withdrew its defense of Mitchell.

Mitchell filed a supplemental brief on December 5, 2022, claiming its motion was based on Mitchell not authorizing the dismissal of the cross-complaint. The brief did not mention section 473, subdivision (d) or contend that the judgment was "void."

11

DeHaro and Bradley filed supplemental briefs opposing Mitchell's motion. Bradley also sought judicial notice of a May 2020 report of the California Senate Judiciary Committee regarding Assembly Bill 2723, which amended section 664.6 to provide that a writing agreeing to a settlement may be enforced under that section if the writing is signed by the attorney, even if it is not signed by the client. Bradley and DeHaro contended that section 664.6 provided an independent reason to deny Mitchell's motion.

Mitchell's motion to vacate was heard on December 12, 2022. The trial court stated that Mitchell's "stretch[ing] the [motion] out this long," despite knowing "what was going to happen in the deposition of Ms. Whirl," was "close to sanctionable."

By written order, the trial court denied Mitchell's motion to vacate. The court explained: "The motion is based on the claim that Mitchell president Curtis Mitchell was 'surprised by the dismissal.' [Citations.] However, the deposition of Mitchell's lawyer has now been taken and it establishes that she addressed the cross-complaint's dismissal with Mr. Mitchell and his company on several occasions, so no surprise was warranted. [Citations.] In its December 5, 2022, supplemental brief, Mitchell Engineering shifts focus to a notion that its lawyer was not authorized to dismiss the cross-complaint. This argument would have more force had Mr. Mitchell not sat silent while knowing the cross-complaint would be (and then was) dismissed. [Citations.] Moreover, the dismissal is enforceable under CCP 664.6."

Mitchell filed a timely notice of appeal.

12

## II. DISCUSSION

### A. Section 473, Subdivision (b)

In the trial court, Mitchell's briefs relied on section 473, subdivision (b), and the court ruled that Mitchell was not entitled to relief under that subdivision. Mitchell's opening brief in this appeal, however, does not challenge the court's ruling as to subdivision (b). Although Mitchell's reply brief discusses subdivision (b), Mitchell waived its challenge to the court's ruling by not raising the issue in the opening brief. (*Tisher v. California Horse Racing Board* (1991) 231 Cal.App.3d 349, 361.)

Even if we were to consider Mitchell's arguments under section 473, subdivision (b), Mitchell has not established error. As relevant here, the subdivision states: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." Although Mitchell claims the dismissal was taken by surprise and excusable neglect, it fails to show that the trial court's rejection of its claims was an abuse of discretion. (*Sprague v. County of San Diego* (2003) 106 Cal.App.4th 119, 127 [abuse of discretion review for rulings under section 473, subdivision (b)].)

#### 1. Surprise

Mitchell claimed below that the dismissal of its cross-complaint was a surprise that it did not learn about until July 2022. In this context, surprise means a "condition or situation in which a party . . . is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence could not have guarded against." (*Credit Managers Assn. v. National Independent Business Alliance* (1984) 162 Cal.App.3d 1166, 1173; see *State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 611–

13

612.)  As explained below, the trial court did not abuse its discretion in rejecting Mitchell's claim of surprise.

Despite Curtis Mitchell's claim, ample evidence supported the trial court's conclusion that Whirl "addressed the cross-complaint's dismissal with Mr. Mitchell and his company on several occasions, so no surprise was warranted."  As shown by documentary evidence and Whirl's deposition testimony, Mitchell was informed of Whirl's proposal to dismiss the cross-complaint against Bradley and DeHaro in her December 14, 2021 email, and her December 21, 2021 status report indicated that she was stipulating to the settlement and "drop[ping]" Mitchell's cross-claims.  The dismissal, two weeks later, was therefore not due to a circumstance in which Mitchell was *unexpectedly* placed, and which ordinary prudence could not have guarded against.

Mitchell argues in its reply brief that Curtis Mitchell was surprised in the sense that he did not think a dismissal would be entered without his express consent.  However, Whirl's report on December 21 gave notice to Mitchell that Whirl was, in fact, dismissing the cross-complaint without its express consent.  Mitchell fails to demonstrate an abuse of discretion.

### 2.  Excusable Neglect

Mitchell claimed in the trial court that Whirl's dismissal of the cross-complaint without its express consent was excusable neglect.  "Excusable neglect" exists if " ' "a reasonably prudent person under the same or similar circumstances" might have made the same error.' "  (*Solv-All v. Superior Court* (2005) 131 Cal.App.4th 1003, 1007.)  Mitchell fails to show that a reasonably prudent attorney would have dismissed the cross-complaint without Mitchell's express consent.

14

As Mitchell points out elsewhere in its briefs, an attorney's act that impairs a client's substantial rights—such as dismissing a client's cross-complaint—is generally "valid only with [the] client's *express* authorization." (*Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1582, italics added; see *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 407; Cal. Rules Prof. Conduct, rule 1.2(a).) In obtaining this authorization, the lawyer must adequately apprise the client of the advantages and disadvantages of the proposed settlement and dismissal of the claims. (*Bice v. Stevens* (1958) 160 Cal.App.2d 222, 232 ["[w]ithout his client's free and intelligent consent, after full knowledge of all the facts and circumstances, an attorney may not surrender any substantial right of his client; nor may he impair, compromise, or destroy his client's cause of action"]; Cal. Rules Prof. Conduct, rules 1.01(e), 1.4(b), 1.4.1(a)(2).) Here, it is undisputed that Whirl did not obtain Mitchell's express authorization to sign the Stipulation or file the request for dismissal, and Mitchell's mere silence in the face of Whirl's December 14 and December 21 communications did not constitute express authorization.[3]

---

[3] In her emails, declaration, and deposition, Whirl stated that a Travelers claims adjuster agreed to the dismissal of Mitchell's cross-complaint, suggesting that Mitchell's consent was thus unneeded. A client's consent to a settlement may not be required where the client's insurance policy gives the insurer the right to settle within policy limits without such consent. (See, e.g., *Fiege v. Cooke* (2004) 125 Cal.App.4th 1350, 1353 [settlement enforceable under section 664.6 even though clients did not agree to it in writing or orally before the trial court, where "insurers fully cover the settlement under a policy that gives them the right to settle without the insureds' consent"]; *Hurvitz v. St. Paul Fire & Marine Ins. Co.* (2003) 109 Cal.App.4th 918, 920 [where policy grants the insurer the duty to defend and the right to settle any claim within policy limits, the insurer need not obtain the insured's consent before settling].) The parties here, however, do not argue that the Travelers policy gave Travelers that right, let alone that Travelers had the right to authorize the dismissal of Mitchell's *affirmative* claims in its cross-complaint.

15

In its reply brief, Mitchell contends Whirl's neglect was excusable because her "pattern of interactions with her client falsely but reasonably gave her the impression that she had authority to sign the Dismissal." According to Mitchell, it would regularly respond to Whirl's emails but gave no response to her email about the proposed dismissal. In stark contrast to its argument elsewhere that a lawyer must obtain express authorization from the client to compromise the client's substantial rights, Mitchell urges that, as a result, "Whirl reasonably believed that Mr. Mitchell's silence represented his approval of her dismissal of the cross-complaint." Mitchell provides no authority that a lawyer's failure to obtain express authorization to dismiss a claim is excusable as long as the lawyer thought authorization-by-silence was sufficient. In any event, he fails to establish error. (See *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1419 ["The inexcusable neglect of an attorney is usually not a proper basis for granting the client's motion under section 473."]; *Zamora v. Clayborn Contracting Group, Inc* (2002) 28 Cal.4th 249, 258 (*Zamora*) ["the discretionary relief provision of section 473 only permits relief from attorney error 'fairly imputable to the client, i.e., mistakes anyone could have made,' " and " '[c]onduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not therefore excusable"].)

### 3. Untimeliness

Even if there was surprise or excusable neglect, application for relief under section 473, subdivision (b) must be "made *within a reasonable time*, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." (§ 473, subd. (b); italics added.) Although the trial court did not rule whether the motion was timely, DeHaro and Bradley argued untimeliness in their opposition, and we may uphold the court's

16

ruling on any correct ground supported by the record. (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1268.) Thus, we independently uphold the denial of Mitchell's motion under subdivision (b) for untimeliness.

Here, the dismissal was entered on January 5, 2022. Mitchell did not apply for relief until nearly six months later, by ex parte application on June 29, 2022, and by noticed motion on July 1, 2022. Even though Mitchell filed its motion within the six month limit established by section 473, subdivision (b), it still must show reasonable diligence. (*Arega v. Bay Area Rapid Transit Dist.* (2022) 83 Cal.App.5th 308, 316 ["What constitutes a 'reasonable time' depends on the circumstances of each case 'but definitely requires a showing of diligence in making the motion after the discovery of the default' "]; *Younessi v. Woolf* (2016) 244 Cal.App.4th 1137, 1145 [diligence requirement not satisfied without evidence explaining seven week delay in moving to set aside dismissal].) Mitchell does not show that it filed its motion to vacate within a reasonable time.

In its reply brief, Mitchell argues that its motion was timely because it was "not fully informed that the Dismissal was executed and filed until June 3, 2022." Substantial evidence supports a contrary conclusion. Mitchell's counsel knew of the judgment of dismissal on the day it was filed, since she filed the request for dismissal. Even if this knowledge is not imputed to Mitchell, the evidence indicated that Whirl informed Curtis Mitchell that she was going to dismiss the cross-complaint several weeks before she did so and informed him of the dismissal multiple times thereafter, including in at least two conversations she had with him when preparing for his deposition. In April 2022, for example, Mitchell questioned why Bradley was no longer in

17

the case, and Whirl explained the reasons for the dismissal. Mitchell does not explain why it took until July 2022 to file a noticed motion.

Nor does Mitchell address the fact that, by the time it got around to claiming the dismissal was entered without its authorization, Plaintiffs' litigation was over: Mitchell had already settled with Plaintiffs, and DeHaro and Bradley—who were given no clue that Mitchell might later protest the dismissal—had long believed their participation in the case was over. A reasonable inference is that Mitchell was not sufficiently diligent in seeking relief. The trial court did not abuse its discretion in declining to vacate the dismissal under section 473, subdivision (b).

B. Section 473, Subdivision (d)

Mitchell contends the trial court erred by denying relief under section 473, subdivision (d), because Whirl was not authorized to dismiss the cross-complaint. The argument is unavailing.

1. Forfeiture

Issues not raised in the trial court generally cannot be raised for the first time on appeal, although we may consider " 'a pure question of law which is presented on undisputed facts.' " (*In re Marriage of Hinds* (1988) 205 Cal.App.3d 1398, 1403.)

Here, Mitchell's notice of motion and memorandum of points and authorities in the trial court did not refer to subdivision (d) of section 473. Mitchell's second amended notice of the motion, filed over two months later, did add subdivision (d) as a ground for the motion, noting relief under that subdivision may be granted to set aside a void judgment or order. The second amended notice, however, was served after DeHaro and Bradley filed their initial oppositions to the motion and was ostensibly providing notice of a new hearing date. Moreover, Mitchell's supplemental brief, filed after the second

18

amended notice, did not mention section 473, subdivision (d) or include any argument that subdivision (d) applied or that the dismissal was "void."

In most cases, an appellant cannot contend that the trial court erred by rejecting an argument the appellant had not raised in its briefing to that court. We will proceed to the merits here, however, because a party may raise a new legal theory on appeal based on facts considered by the trial court (*Ward v. Taggert* (1959) 51 Cal.2d 736, 742), Mitchell's attorney made a passing reference to subdivision (d) at the hearing, and (as shown below) the case law on vacating an order or judgment for lack of client authorization is not always clear on the statutory basis or theory justifying relief.

2. Merits

Section 473, subdivision (d), states: "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and *may, on motion of either party after notice to the other party, set aside any void judgment* or order." (Italics added.) When reviewing an order denying relief under section 473, subdivision (d), we consider de novo whether the judgment is void and, if it is, determine whether the trial court abused its discretion in deciding not to set it aside. (*Nixon Peabody LLP v. Superior Court* (2014) 230 Cal.App.4th 818, 822 (*Nixon Peabody*); *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495–496 (*Cruz*); *Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020–1021 (*Pittman*); but cf. *Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1021–1024 [questioning whether discretion exists where a default judgment was entered in violation of the trial court's fundamental jurisdiction].)

19

Mitchell contends he is entitled to relief under section 473, subdivision (d) because the dismissal of its cross-claims by its attorney without its express consent was void. But the dismissal appears to be voidable, rather than void. As a result, it is not clear that Mitchell may obtain relief under subdivision (d). It is, however, clear that the trial court did not abuse its discretion by declining to set aside the dismissal. We therefore reject Mitchell's contention regardless of whether the dismissal was void for purposes of section 473, subdivision (d).

### a. Voidable, Not Void

A judgment is void if the trial court lacks jurisdiction in a fundamental sense, as where it lacked subject matter jurisdiction, lacked personal jurisdiction over the defendant, or granted relief the court had no power to grant. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 (*American Contractors*); *Estate of Buck* (1994) 29 Cal.App.4th 1846, 1854; *Neumann v. Melgar* (2004) 121 Cal.App.4th 152, 164.) If the court has fundamental jurisdiction but exceeds its jurisdiction by acting contrary to its statutory duties, the judgment is merely voidable, not void. (*American Contractors*, at p. 660; *In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56.) And a judgment that is merely voidable is not subject to section 473, subdivision (d). (*Cruz, supra,* 146 Cal.App.4th at p. 495; *Johnson v. E-Z Ins. Brokerage, Inc.* (2009) 175 Cal.App.4th 86, 99 (*Johnson*) [section 473, subdivision (d) did not apply because the judgment, entered due to the court erroneously awarding terminating sanctions ex parte, was voidable, rather than void]; *Lee v. An* (2008) 168 Cal.App.4th 558, 565 (*Lee*) [no relief under section 473, subdivision (d), because a default and default judgment were voidable rather than void].)

20

Here, Mitchell does not contend the trial court lacked fundamental jurisdiction over the parties or the subject matter. Nor does it dispute that the court had the power to enter a dismissal pursuant to a request for dismissal that appeared valid on its face. As such, Mitchell has not demonstrated that the dismissal is void rather than voidable. To the contrary, while at times urging that the dismissal is void, Mitchell also states in its opening brief that "dismissals based upon unauthorized settlements are *voidable* and subject to being vacated." (Italics added.)

In our view, a judgment entered pursuant to a settlement and request for dismissal that were not authorized by the client would be voidable, not void. This is consistent with the well-established distinction between matters that are "void" as opposed to "voidable," which limits the term "void" to decrees for which the court lacked fundamental jurisdiction. (E.g., *American Contractors, supra,* 33 Cal.4th at p. 660; *In re Marriage of Goddard, supra,* 33 Cal.4th at p. 56; *Cruz, supra*, 146 Cal.App.4th at p. 495; *Johnson, supra,* 175 Cal.App.4th at p. 99; *Lee, supra*, 168 Cal.App.4th at p. 565.) It also comports with common sense and the public policies favoring settlement and the finality of judgments. If an unauthorized judgment is voidable, the judgment can be set aside at the client's option, leaving it to the client to decide whether to seek relief or to ratify the unauthorized settlement agreement and accept the judgment. If an authorized judgment were void, then it would be a nullity, subject to being set aside by any party—including an *opposing* party with buyer's remorse regardless of the client's wishes and interests. (Cf. *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 929–930 [void contract is without legal effect, is a nullity, binds no one, and can neither be validated nor ratified; a voidable contract is one where a party may elect to avoid the legal relations created by the contract or ratify it].)

21

That said, relevant caselaw has not clearly delineated whether a judgment entered pursuant to an unauthorized settlement is void or voidable, or whether it is section 473, subdivision (d) or some other source of authority that may provide the client relief.

For example, consistent with our view is the oft-cited *Whittier Union High School Dist. v. Superior Court* (1977) 66 Cal.App.3d 504 (*Whittier Union*). There, an attorney settled his clients' case for $30,000 without their consent, forging their signatures, dismissing their claims, and pocketing the money. The trial court set aside the dismissal of their claims under section 473. (*Id.* at p. 506.) The defendant filed a writ petition seeking to vacate that order, arguing that the application for relief was not made within six months from the judgment. The court of appeal denied the petition, explaining: "If [the attorney] wholly lacked power to dismiss the cause and acted beyond the scope of his authority in dismissing his clients' complaint, his action remained *voidable* for an indeterminate period, and his clients could vacate the unauthorized dismissal within a reasonable time after learning of it, regardless of the time limitations in section 473." (*Id.* at pp. 507–508; italics added.)

*Whittier Union* did not rely on section 473, subdivision (d), but it did suggest that Mitchell is not entitled to relief under that provision. Even if Whirl lacked the power to dismiss the cross-complaint, the judgment would be merely *voidable* pursuant to *Whittier Union*. As a result, section 473, subdivision (d), by its terms, would not apply.[4] (*Cruz, supra*, 146 Cal.App.4th

---

[4]     Furthermore, under *Whittier Union*, Mitchell had to seek to vacate the dismissal "within a reasonable time after learning of it." (*Whittier Union, supra*, 66 Cal.App.3d at p. 508.) As we have noted, it was within the trial court's discretion to conclude that Mitchell's motion was not timely.

at p. 495; *Johnson, supra,* 175 Cal.App.4th at p. 99; *Lee, supra*, 168 Cal.App.4th at pp. 565–566.)

Other cases cited by Mitchell granted clients relief from dismissals entered without their consent, but they too did not construe the dismissals as "void" or rely on section 473, subdivision (d). (E.g., *Bowden v. Green* (1982) 128 Cal.App.3d 65, 70, 73–74; *Bice v. Stevens, supra,* 160 Cal.App.2d at pp. 225, 233–234.)

The exception is *Romadka v. Hoge* (1991) 232 Cal.App.3d 1231 (*Romadka*). There, an attorney had mistakenly dismissed the clients' case with prejudice, rather than without prejudice as the clients had instructed. The clients moved to vacate the dismissal under section 473. The attorney admitted the mistake, but the trial court denied the motion. (*Id.* at p. 1234.) The court of appeal reversed, ordering that the dismissal be entered without prejudice. Noting the language in section 473, subdivision (d), the court of appeal ruled that "[a]n attorney's unauthorized disposition of clients' substantive rights is invalid and a judgment based thereon is therefore void." (*Id.* at p. 1236.)[5]

---

[5]    Courts have viewed the factual scenario in *Romadka* as presenting an issue of attorney mistake. (*Zamora, supra*, 28 Cal.4th at p. 259 [citing *Romadka* as a case in which a judgment was vacated due to an attorney mistake]; *Brown v. Williams* (2000) 78 Cal.App.4th 182, 187 ["The plaintiff in *Romadka* was able to obtain relief under section 473 because the voluntary dismissal was entered by mistake]; see *Robinson v. Hiles* (1953) 119 Cal.App.2d 666, 668–673 [misunderstanding between attorney and client, resulting in dismissal of the client's claims, provided a basis for setting aside the dismissal under section 473, where the client acted with due diligence after discovering the attorney's mistake].) Mistake is a ground for relief under subdivision (b) of section 473. That ground would not have been available here because Mitchell did not act with due diligence.

In the end, we need not and do not decide whether an unauthorized judgment in these circumstances is void (*Romadka*) or voidable (*Whittier*), for two reasons: (1) substantial evidence supports the conclusion that Mitchell ratified the settlement and dismissal, and thus the dismissal cannot be set aside; and (2) even if the dismissal is deemed void, the court did not abuse its discretion under section 473, subdivision (d) in declining to vacate it.

### b. *Ratification*

In response to Mitchell's argument that Whirl was not authorized to dismiss the cross-complaint, the trial court concluded: "This argument would have more force had Mr. Mitchell not *sat silent while knowing the cross-complaint would be (and then was) dismissed*." (Italics added.) The court's finding was supported by substantial evidence, including Whirl's testimony and documents indicating her many communications with Mitchell before and after the dismissal was filed.

The trial court's finding supports a conclusion that, although Whirl did not obtain the requisite express authority for the settlement and dismissal, Mitchell's failure to lodge an objection and promptly take steps to rectify the matter constitutes a ratification that precludes relief. "It is well settled that a client may ratify the unauthorized actions of his attorney." (*Navrides v. Zurich Ins. Co.* (1971) 5 Cal.3d 698, 703; see *Blanton v. Womancare, Inc., supra,* 38 Cal.3d at p. 408 [recognizing possibility of ratification]; *Rivera v. Shivers* (2020) 54 Cal.App.5th 82, 92 ["even an unauthorized act by an attorney concerning substantial rights can be later ratified by the client and thus bind him or her"]; *Moving Picture etc. Union v. Glasgow Theaters, Inc.* (1970) 6 Cal.App.3d 395, 403 [although an attorney has no power to bind its client to settlement without specific authorization, the attorney's act is binding on the client if the client "ratifies it or accepts the benefits of the

24

attorney's acts"].)  Ratification may occur where the client fails to lodge *prompt* disagreement with his or her attorney's action.  (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 79 [client's failure to take "immediate action to express dissatisfaction with [her attorney's] arbitration demand on her behalf . . . constitute[s] a ratification"].)  And where the client has ratified a previously unauthorized act of his or her attorney, there is no basis for concluding that the resulting dismissal is void or voidable due to the lack of authorization.  (See *Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73 [effect of ratification, as to some or all persons, "is to treat the act as if originally authorized"].)[6]  For this reason alone, the trial court did not abuse its discretion by declining to set aside the dismissal of Mitchell's cross-claims.

### c.  *Even if Void, No Abuse of Discretion*

Even if the dismissal was not authorized or ratified, and even if it was void under section 473, subdivision (d), the statute gives the trial court discretion to decide whether the judgment should be set aside.  (*Romadka, supra*, 232 Cal.App.3d at p. 1237; see *Nixon Peabody, supra,* 230 Cal.App.4th at p. 822; *Cruz, supra,* 146 Cal.App.4th at pp. 495–496; *Pittman, supra,* 20 Cal.App.5th at pp. 1020–1021.)  Mitchell fails to demonstrate an abuse of discretion.

*Romadka* ultimately shows why Mitchell is not entitled to relief under section 473, subdivision (d).  In *Romadka*, after concluding the judgment was

---

[6]     Mitchell contends that "[c]ase law involving a client's acquiescence is only persuasive when the client is present at the time the attorney makes the unauthorized act," citing *People v. Jordan* (1970) 11 Cal.App.3d 597.  Mitchell does not cite a specific page in *Jordan* that supports this proposition, and we could find nothing in *Jordan* to support it.  *Jordan* concluded that a client had acquiesced to his counsel's act while standing in his presence, but did not suggest that ratification is impossible if the client was not in the attorney's presence.  (*Id*. at p. 599.)

void, the court of appeal considered whether the trial court abused its discretion in denying relief. Because the client's counsel had submitted a declaration admitting that she acted without authority and by mistake, and there was no basis for the trial court to disbelieve this evidence, the court of appeal found that the trial court abused its discretion in denying the clients' motion to vacate the dismissal with prejudice. (*Romadka, supra*, 232 Cal.App.3d at p. 1237.)

Here, by contrast, Whirl did not admit that Mitchell lacked knowledge or that Whirl made a mistake checking a box on a dismissal form. Instead, her position—supported by substantial evidence—was that Mitchell knew or should have known that the dismissal was going to be entered, and that Mitchell knew about the entry of the dismissal well before Mitchell sought to vacate it. The trial court found her position to be true. This case is therefore distinguishable from *Romadka*, as well as other cases in which an attorney acted unilaterally on the client's behalf without notifying the client at all. (See *Whittier Union, supra*, 66 Cal.App.3d at p. 509 [lack of authority must be shown by "strong and convincing proof, and the longer the delay in the application for relief the stronger and more convincing the factual proof should be;" "[w]hen nothing more than client misunderstanding or client change of heart is involved, the propriety of such relief is doubtful"].)

Other circumstances also supported the trial court's refusal to grant relief. As we have discussed, Mitchell did not file a motion until nearly six months after the entry of the dismissal even though there is substantial evidence that Curtis Mitchell found out about the dismissal months earlier. Even accepting Mitchell's claim that it lacked full knowledge of the dismissal until June 3, 2022, Mitchell did not bring the matter to the attention of the trial court (or Bradley or DeHaro) for weeks, after it had settled with

26

Plaintiffs and the case was essentially over. Indeed, on June 13, 2022, Mitchell (through new counsel) asked the court to continue the trial, without mentioning any concerns about the validity of its settlements with Bradley and DeHaro.

In sum, whether or not the judgment of dismissal may be deemed void due to Whirl's failure to obtain Mitchell's express consent to its entry, Mitchell fails to establish that the trial court abused its discretion in denying relief.[7]

## III. DISPOSITION

The order is affirmed.

---

[7] According to respondents, Mitchell's argument that Whirl lacked authority to dismiss the cross-complaint is unavailing due to Assembly Bill 2723 (AB 2723), which became effective on January 1, 2021, before the Stipulation in this case. AB 2723 amended section 664.6, such that a settlement agreement may be enforced under that section even if the agreement is signed only by a party's attorney and not by the party itself. The amendment explicitly overturned *Levy v. Superior Court* (1995) 10 Cal.4th 578, 586, which had interpreted section 664.6 to require the signature of the litigants themselves because attorneys must obtain settlement authorization from their clients. As respondents point out, a Senate Judiciary Committee Report states that the amendment was intended to "explicitly grant[] the authority to stipulate to settlements to attorneys, on behalf of the parties they represent," to "streamline this process in order to meet the goals of efficiency and economy." The enforcement of the Stipulation under the streamlined process of section 664.6, however, is not at issue here, and we question the relevance of AB 2723 to this appeal. But we need not and do not reach the issue, because we affirm the trial court's order on other grounds.

_____

CHOU, J.

We concur.

_____

JACKSON, P. J.

_____

BURNS, J.

*W. Bradley Electric, Inc. v. Mitchell Engineering* / A167137

A167137 / W. Bradley Electric, Inc. v. Mitchell Engineering

Trial Court: City & County of San Francisco Superior Court

Trial Judge:      Richard B. Ulmer Jr.

Counsel:     Sellar Hazard & Lucia; Christian Lucia, Ganette Mary-Marie Genetti, Justin Michael Graham, and Peter Keith Pritchard for Appellants.

Rankin, Shuey, Mintz, Lampasona & Harper; Kevin R. Mintz, Nima B. Aminian, The Aguilera Law Group; Raymond E. Brown for Respondents.